Anne Wilson KRAUSSE, Individually, etc.,
et al., Appellants,

v.

Mary Scott BARTON et al., Appellees.

No. 15318.

Court of Civil Appeals of Texas.

Houston (1st Dist.).

June 6, 1968.

Rehearing Denied June 27, 1968.

Childress, Port & Crady, Virgil Childress, Houston, for appellants.

Levy, Levy, Schwab & Coughlin, Lawrence M. Coughlin, Galveston, for appellees.

COLEMAN, Justice.

This is a suit for a declaratory judgment. It presents the question of whether any of the property over which Nellie H. Wilson held a general power of appointment, granted to her by the will of her deceased husband, was available to her executor at her death for the payment of debts, expenses, costs of administration, and taxes.

The case was tried upon a written stipulation of facts without any oral testimony. In the judgment rendered by the trial court it was decreed that by her will Nellie H. Wilson exercised the power of appointment created in the will of her husband, William H. Wilson, by (a) appointing to her estate so much of such property subject to the power as was necessary for the payment of the debts, expenses and costs of administration, and for the payment of inheritance and estate taxes, and (b) appointing the balance of such property subject to the power to Anne Wilson Krausse, in trust for the benefit of Jean Krausse Davies.

William H. Wilson died on February 5, 1954. His last will and testament was duly admitted to probate on February 23, 1954, in Harris County, Texas. By this will a trust for the benefit of Nellie H. Wilson was established, and Anne Wilson Krausse, the independent executor of the will, was named trustee. She served as trustee throughout the lifetime of Nellie H. Wilson, her mother.

From the latter part of the year 1957 until her death, Nellie H. Wilson was confined to a hospital under the care of a physician, with a nurse constantly in attendance. She resided in St. Mary's Infirmary in Galveston, Texas, for several years. Later she resided at Twelve Oaks Hospital, and she was living at Golden Age Manor when she died.

On May 27, 1958, Nellie H. Wilson executed her last will and testament. At that time she had a personal estate valued at approximately $60,000.00, not considering her interest in the "Nellie H. Wilson Trust," of which $50,000.00 was derived from an inheritance from the estate of her brother, R. W. Hamilton. On that date the property constituting the "Nellie H. Wilson Trust" had a value of at least $200,000.00. The "personal estate" consisted entirely of cash in bank accounts or money due to her from the estate of her brother. On this date she was almost 92 years of age.

Wm. H. Wilson devised one-half of all his separate property to the "Nellie H. Wilson Trust." Section III of his will reads:

"This trust shall terminate at the death of my wife, Nellie, and thereupon I direct my Trustee, after payment of her funeral expenses and all expenses of her last illness, to deliver and pay over the residue of the Nellie H. Wilson Trust to such persons (including her own estate) and in such shares as my wife shall appoint by her last Will and Testament; and in default of such appointment my Trustee shall deliver and pay over the residue of this trust to the person or persons who would have been entitled to take the residue of my estate under Article III of this will had I died on the date of termination of this trust."

Pertinent provisions of Nellie H. Wilson's will follow:

*DECLARATION*

"I hereby declare that I maintain my permanent residence at Galveston, Galveston County, Texas; that I am the widow of WILLIAM H. WILSON, who was a resident of the City of Houston, Harris County, Texas, prior to his death on February 5, 1954; that I have only one child, my daughter, ANNE WIL-

SON KRAUSSE, who is now married to R. M. KRAUSSE and resides at Fredericksburg, Texas; and that it is my intention by this Will to dispose of all property of every kind which I may own or claim at the time of my death.

## ARTICLE I

"I direct my Executor, as soon after my death as practicable, to pay all of my just debts, including funeral expenses, expenses of last illness, all costs of administration, and all estate and inheritance taxes levied against the devisees and legatees named herein or against the property comprising my taxable estate for estate or inheritance tax purposes even though a part of such property may not be subject to administration hereunder by my Executor as a part of the estate passing under this Will, such debts, expenses, costs and taxes shall be paid by my Executor from the residue of my estate as herein devised and bequeathed.

## ARTICLE III

"*Section 1.* All other property of every kind which I may own or claim at the time of my death or over which I then shall have any power of testamentary disposition, including any sum remaining on deposit in my *checking* account in The Gross National Bank of San Antonio, Texas, I give, devise and bequeath to my trustee hereinafter named, in trust, however, to hold, manage, control, invest and reinvest, and distribute the income and principal thereof, all in accordance with the powers and authority and subject to the terms, provisions, conditions and limitations hereinafter declared and expressed. My executor shall not be required to delay creation of this trust until the closing of my estate, but from time to time during administration may transfer to my trustee such money and property as my executor considers desirable in the execution of this Will for the greatest benefit of all beneficiaries hereof."

Article II of this will bequeaths to St. Mary's Infirmary the remainder of Mrs. Wilson's inheritance from the estate of her brother, R. W. Hamilton, as well as the balance remaining in her savings account in a named bank. By a codicil executed on June 4, 1964, Mrs. Wilson deleted this Article from her will and replaced it with an Article II by the terms of which all of Mrs. Wilson's inheritance from the estate of her brother, R. W. Hamilton, remaining at her death, was bequeathed to her granddaughter, Jean Davies, her cousins, Mary Hamilton Willis and Florence H. McIntyre, and her nurses, Mrs. Santos Gomez and Mrs. Mary Scott Barton, in equal one-fifth shares.

At the time this codicil was executed the value of Mrs. Wilson's personal estate over and above the value of the "Nellie H. Wilson Trust" was about $40,000.00, and about $35,000.00 of this amount represented the balance of her inheritance from the estate of her brother. The value of the property in the trust was at least $300,000.00. Mrs. Wilson was then almost 98 years of age and had resided in hospitals under the constant care of doctors and nurses almost six years.

Mrs. Wilson died on November 21, 1965. Her will and the codicil were admitted to probate, and her daughter, Anne Wilson Krausse, qualified as independent executor. At the time of the trial she was the duly qualified and acting independent executor of the will of Nellie H. Wilson and trustee of the trust for Jean Krausse Davies and her descendants established under the terms of that will.

The inventory which Mrs. Krausse filed in the probate court of Harris County showed as the only assets owned by decedent and subject to administration certain bank accounts in a total amount of $37,632.33. It was stipulated that the balance of Mrs. Wilson's inheritance from her brother's estate remaining at her death was $35,417.15. The value of the trust property at her death was appraised for

inheritance and estate tax purposes at $422,-364.32.

The executor has paid funeral expenses and debts in a total sum of $975.80. She has incurred attorney's fees in the sum of $12,000.00, and other administration · expense in the sum of $2,000.00. She has paid to the Internal Revenue Service estate taxes in the amount of $100,660.24, and to the State of Texas inheritance taxes in the amount of $8,240.03.

Unless the will of Mrs. Wilson is construed as appointing to her estate so much of the "Nellie H. Wilson Trust" as is necessary to pay these expenses and taxes, it is evident that the specific bequests found in Article II of the will must be entirely consumed.

 A power of appointment is neither property nor an estate, but is a mere right or power. The authority given to the donee of a power of appointment does not vest in him any estate, interest, or title in the property which is the subject of the power. 41 Am.Jur., Powers, § 2, p. 806.

It is stated as a general rule in 41 Am. Jur., Powers, § 54, p. 845, that, "Where the will of a person having a power of appointment first directs the payment of debts and up to this point makes no mention of the power of appointment, the direction must be taken as meaning that such debts are to be paid out of the individual estate, *unless the will in other parts shows a contrary intent.*" (Emphasis added.)

In G. A. C. Halff Foundation v. Calvert, 281 S.W.2d 178 (San Antonio Tex.Civ.App. 1955, ref., n. r. e.), the court quoted with approval from 41 Am.Jur., Powers, § 70, p. 857, as follows:

"It is a well-founded principle that where a person takes by execution of a power, he takes, under the authority of the power, as if the power and the instrument executing the power had been incorporated in one instrument. * * *

An appointee takes from the donor, the donee being treated as the agent of the donor. * * * An appointee under a power, even though he is a child of the donee, does not take by descent from the donee, but by purchase from the donor of the power."

In Republic National Bank of Dallas v. Fredericks, 283 S.W.2d 39 (Tex.Sup.1955), the Court said:

"All of the words used by the testator in his will and which express his wish for the distribution of his estate on his death should be interpreted in the sense in which they were used, in order that the plan of distribution of his estate may be enforced. * * *

" * * * * * *

"The general rule is that in order for a will or deed to constitute the exercise of a power of appointment the intent to exercise such power must be so clear that no other reasonable intent can be imputed under the will. The will must refer to the power of appointment or to the property subject to such power, or the donee of the power must have owned no other property to which the will could have attached and thus the will have been a vain and useless thing except it be held to be an exercise of the power. * * * '* * * If, from the circumstances or the instrument executed, it be doubtful as to whether it was the intention to execute the power possessed by the grantor, then it will not be held that by such act or conveyance that power was in fact executed.' Hill v. Conrad, 1897, 91 Tex. 341, 43 S.W. 789, 791, (2); * * *"

 Considering the above rules of law, we will examine the will of Nellie H. Wilson and the circumstances surrounding its execution, as well as the circumstances surrounding the execution of the subsequent codicil, to ascertain the intentions of the testator, and the proper construction to be placed on the language used in the will.

Crowley v. Vaughan, 347 S.W.2d 12 (San Antonio Civ.App.1961, error ref.).

■ Nellie H. Wilson clearly was referring to the power of appointment when she stated, in Article I of her will, "even though a part of such property may not be subject to administration hereunder by my executor as part of the estate passing under this will," and again, in Article III, when she referred to "property over which I then shall have any power of testamentary disposition." The power of appointment was exercised. Republic National Bank of Dallas v. Fredericks, supra.

The troublesome question lies in determining whether Mrs. Wilson intended to merge the property over which she had the power of appointment with her personal estate and then to devise and bequeath the entity in trust, or whether she intended to devise her personal estate to the trust and also to exercise the power of appointment in favor of the trust thereby effecting a transfer of the property subject to the power directly from the estate of her husband.

The will of William H. Wilson authorized Mrs. Wilson to appoint her own estate by her last will and testament. By Article I of her will Mrs. Wilson directed her executor to pay all debts, including the expenses of her last illness and funeral expenses, and taxes, including taxes levied by reason of the exercise of the power, from "the residue of my estate as herein devised and bequeathed." The will of William H. Wilson had directed that the expenses of the last illness of Mrs. Wilson and her funeral expenses be paid by his trustee before the residue of the trust should be delivered to the one appointed by Mrs. Wilson.

The meaning of the phrase "residue of my estate as herein devised and bequeathed," as it was probably understood by the testator, must be determined by reference to Article III. By this article Mrs. Wilson disposes of all other property "which I may own or claim at the time of my death or over which I then shall have power of testamentary disposition." At the time the will was written the residue of her estate, aside from the property over which she had power of testamentary disposition, did not exceed $10,000.00. Considering the state of her health and her advanced age, these funds could not be expected to increase substantially. It is evident that Mrs. Wilson had professional advice in the preparation of this will, and was cognizant of the fact that there would be liability for substantial estate and inheritance taxes as well as the usual expenses of administration. This would again be brought to her attention when she republished her will at the time the codicil was executed. At that time this residue of her estate was only $5,000.00. Yet she bequeathed all of her inheritance from her brother to her granddaughter, her cousins, and her nurses. Since the value of the trust estate had increased from $200,000.00 on the date of the original will to $300,000.00 on the date of the execution of the codicil, she probably was advised and knew that the tax liability would exceed the $5,000.00 residue and the inheritance from her brother as well. Another provision of the will, to be quoted hereinafter, shows that she anticipated large expenses. Under these circumstances the special bequests would be nugatory, a result which the testator in all probability did not intend.

An intention to blend the appointive estate into the residual estate can be inferred from other langauge of the will. In Section 1 of Article III the testator authorized her executor to create the trust for the granddaughter before the estate was closed and to transfer to the trustee during administration such money and property as the executor considered desirable. Unless there was a merger of the estates, this provision was unnecessary. Once the will was admitted to probate, absent an appointment to the estate, all of the appointive estate passed from the estate of William H. Wilson to the Jean Krausse Davies Trust, and was not available to the executor for any purpose.

By Section 1 of Article IV Anne Wilson Krausse was appointed executor of the will and trustee of the trust "to be administered hereunder". By section 2 certain powers of the executor and trustee were enumerated. In various sub-sections the testator clearly includes the appointive estate within the meaning of the term "my estate". For example, in sub-paragraph (2) the executor and trustee was authorized to dispose of original property by sale, exchange or otherwise and to receive and administer the proceeds "as a part of my estate", and to borrow money for the improvement of any real estate "comprising a part of my estate".

Sub-paragraph (3) is particularly revealing. It reads:

> "To renew existing indebtedness, both secured and unsecured, and to borrow money on the credit of my estate for the purpose of paying all debts, estate and inheritance taxes and expenses of administration, and preserving and managing my estate for the benefit of all persons interested therein, and in connection therewith, to pledge, mortgage or otherwise encumber any property held as a part of my estate."

These provisions, considered in light of the fact that the estate other than the appointive estate, consisted only of a relatively small amount of cash, and in the case of the inheritance from the brother, the fact that the testator intended that it remain in a savings account, together with the fact that the appointive estate was quite large and, in all probability, was widely invested, constitute a clear indication that the testator intended that the appointive estate become part of her residual estate, and that it pass to her executor under the terms of her will.

The testator intended to care for Jean Krausse Davies and her descendants. She also wished to bestow a portion of her bounty on certain of her relatives and her nurses. She is presumed to know the nature and extent of her property and the natural objects of her bounty.

The primary maxim in the construction of a will is to ascertain the testator's intentions. Every part of a will should be harmonized and given effect, if possible, to the end that the intentions of the testator be carried out. Calvery v. Calvery, 122 Tex. 204, 55 S.W.2d 527 (Tex. Com.App.1932, opinion adopted).

While we recognize the rules of law previously quoted from American Jurisprudence, after careful consideration of the entire instrument we are of the opinion that the testator intended to, and did, merge the appointive estate into her residual estate. The various points of error presented by appellant must be denied.

The judgment of the Trial Court is affirmed.