Jack L. NOWLIN, Appellant,

v.

The FROST NATIONAL BANK, Texas Heart Institute, and AIDS Foundation Houston, Inc., Appellees.

No. 01–94–01093–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 14, 1995.

Joseph S. Horrigan, Steven E. Hollis, Houston, for appellant.

Martha Failing, Houston, for appellees.

Before PRICE[1], FARRIS[2] and TAFT, JJ.

1. The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

2. The Honorable David F. Farris, former Justice, Court of Appeals, Second District of Texas at Fort Worth, sitting by assignment.

## OPINION

TAFT, Justice.

In this appeal, we are asked to decide whether Karl D. Nowlin validly exercised his special testamentary power of appointment in favor of the Texas Heart Institute and the AIDS Foundation Houston, Inc. (the charities). We will affirm the summary judgments granted to the charities.

### Summary of Facts

On July 21, 1981, Carroll and Mary Nowlin created express trusts for the benefit of their sons, Jack and Karl. The trusts were initially funded from the proceeds of several life insurance policies totaling approximately $800,000. The terms of the trust agreement specify that each trust terminates two years following the death of the last of the grantors to die, or when the beneficiary reaches age 35, whichever is later. The trust terms also permit each beneficiary to execute a special testamentary power of appointment. The exact language of the relevant portion of section 1.6 of the trust agreement provides:

Each Beneficiary shall have the special testamentary power to appoint (outright, in trust or otherwise) all or any part of the property remaining in such Beneficiary's trust to any person or persons related to such Beneficiary by blood, marriage or adoption or to any charity or charities.... Such special power shall be exercisable by such Beneficiary only by specific reference in such Beneficiary's will; provided, however, the exercise of such special power shall not be valid if it requires the Trustee to make a distribution of the property subject to such power to the appointee of such Beneficiary prior to the expiration of two years following the death of the last to die of the Grantors.

Carroll Nowlin died in 1985, and is presently survived by his wife and his son, Jack. The Nowlins' other son, Karl, died in 1992. Karl's will included a provision exercising this special power of appointment. Section 2.8 of his will provides:

It is my intention to exercise the special testamentary power of appointment as granted to me in Section 1.6 Article I of

that certain Trust Agreement dated July 21, 1981 between Carroll B. Nowlin and Mary D. Nowlin as Grantors and Jack L. Nowlin as Trustee ("Trust Agreement"). I hereby appoint all of the remaining property in the Trust created by the Trust Agreement over which I have special power of appointment to the following charitable organization [sic]:

Texas Heart Institute—50%

Aids Foundation Houston—50%

It is this appointment of the trust property to the charities that is contested by appellant, Jack Nowlin, who contends that his brother's exercise of the special testamentary power of appointment was not valid.

### Procedural History

Cullen Center Bank and Trust (now Frost National Bank) was appointed the successor trustee following appellant's resignation as trustee. The bank filed a petition for declaratory judgment in probate court on January 21, 1993. The bank asked the court to construe the trust instrument to determine whether Karl Nowlin validly exercised his special testamentary power of appointment and to determine when the ultimate beneficiaries would receive the estate.

The charities filed separate motions for summary judgment, as did appellant. The court heard the motions for summary judgment at one time. Appellant's motion was denied August 1, 1994. The Texas Heart Institute's motion was granted August 1, 1994. The AIDS Foundation's motion was granted September 8, 1994.

The court determined only that the exercise of the power of appointment was valid, and deferred judgment on when the beneficiaries would receive the estate. On October 7, 1994, the court signed an order for severance of action, rendering the summary judgments final and appealable.

### Points of Error

In three points of error, appellant makes two arguments: (1) that the motions for summary judgment were improperly granted to the charities and improperly denied to him because Karl Nowlin's attempted exercise of

his power of appointment was invalid; and (2) the court erred in not finding ambiguity in the clause creating the trust agreement and in declining to consider the intent of a grantor to resolve the ambiguity.

## Standards of Review

■ An order *denying* summary judgment is not appealable unless both parties have moved for summary judgment, and one motion is granted while the other is overruled. *Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex.1988); *Tobin v. Garcia,* 159 Tex. 58, 316 S.W.2d 396, 400–01 (1958). Courts of appeals may consider the denial of a summary judgment only if appellant complains of both the granting of appellee's motion and the denial of his own. *Jones,* 745 S.W.2d at 900. The court may then appropriately resolve the entire case, including rendering the appropriate judgment. *Utica Nat'l Ins. Co. v. Fidelity & Cas. Co.,* 812 S.W.2d 656, 658 (Tex. App.—Dallas 1991, writ denied). Appellant has properly complained of the disposition of his own and of the charities' motions for summary judgment, thus permitting review by this Court.

■ Summary judgment shall be rendered if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion or in an answer. Tex.R.Civ.P. 166a(c); *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex.1985). Construction of a trust instrument is a question of law for the trial court when no ambiguity exists. *Hancock v. Krause,* 757 S.W.2d 117, 119 (Tex.App.— Houston [1st Dist.] 1988, no writ). If the court can give a certain or definite legal meaning or interpretation to the words of an instrument, it is unambiguous and the court may construe it as a matter of law. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983). If, however, the meaning of the instrument is uncertain or reasonably susceptible to more than one meaning, it is ambiguous. *Id.* If it is ambiguous, then its interpretation presents a fact issue precluding summary judgment. *Id.* at 394.

## Ambiguity in the Trust Agreement

■ In his third point of error, appellant complains that the trial court erred in failing to find that there was an ambiguity in the trust agreement creating the power of appointment, and in failing to consider the intent of one of the grantors to resolve the ambiguity. As part of his summary judgment proof, appellant submitted an affidavit from his mother in which she stated:

> As a Grantor, it was my intent in executing the Trust Agreement that no power of appointment, as granted under Section 1.6 of the Trust Agreement, was to be exercised prior to the expiration of two years after the death of the last to die of my husband, Carroll B. Nowlin, and myself.

■ Appellant correctly states that the parol evidence provided by this uncontroverted affidavit supplies the only meaning that can be used *if* the court finds that the trust language is ambiguous. If the court finds no ambiguity, however, then Mary Nowlin's affidavit is irrelevant because appellant does not claim that when the trust agreement was signed there was any fraud, accident or mistake. Accordingly, the parol evidence rule would bar extrinsic evidence to contradict, vary or add to the terms of an unambiguous written agreement. *Kuper v. Schmidt,* 161 Tex. 189, 338 S.W.2d 948, 952 (1960).

"Only if the intention of the parties *as expressed on the face of the document* is doubtful may the court resort to parol evidence to resolve the doubt." *Massey v. Massey,* 807 S.W.2d 391, 405 (Tex.App.—Houston [1st Dist.] 1991), *writ denied,* 867 S.W.2d 766 (Tex.1993). Examining the language of section 1.6 of the trust agreement, we find that it is not ambiguous on its face. It is not susceptible to more than one meaning. The trust is quite clear that if the exercise of the special power of appointment requires the trustee to make a distribution of the property subject to the power prior to the expiration of two years following the death of the last of the grantors, it shall not be valid.

Any ambiguity lies not in the language of the trust agreement, but in the language of the will, because it was silent as to the timing of distribution. In the absence of ambiguity in the trust agreement, the trial court did not

err by declining to allow parol evidence from Mary Nowlin regarding her intent.

We overrule appellant's third point of error.

## The Special Testamentary Power of Appointment

■ In points of error one and two, appellant claims that the attempted exercise of a power of appointment by Karl Nowlin was invalid. The crux of appellant's argument is that because his brother's will did not expressly *defer* distribution until two years following Mary Nowlin's death, the trust provision was violated. The charities argue that because the will did not expressly *require* distribution, the terms of the trust agreement were honored. The pertinent inquiry, then, is whether Karl Nowlin's will *required* distribution of the property subject to the power of appointment.

Appellant applies probate and property law to argue that the testator's death required immediate distribution. The charities urge this Court to read the will and the trust agreement together as one instrument, and to conclude that immediate distribution is not required but is instead controlled by the terms of the trust.

It is thus necessary to examine the will itself, to see if it expressly required distribution, as well as appellant's arguments that probate law applies to require distribution or that property law applied to render the appointment invalid. In order to avoid confusion, we address the meaning of a power of appointment first.

### I. Power of Appointment

■ Texas law describes a power of appointment as neither property nor an estate, but merely as a right of power. *Krausse v. Barton,* 430 S.W.2d 44, 47 (Tex. Civ.App.—Houston [1st Dist.] 1968, writ ref'd n.r.e.). The authority given to the donee of a power does not vest in him any estate, interest or title in the property. *Id.* The appointee takes not from the donee of the power, but from the donor. *Id.*

Applying this definition to the present case, Carroll and Mary Nowlin, the donors, gave a power of appointment to Karl Nowlin, the donee. Karl received no estate, interest or title in any property. Karl merely had a power to appoint family members or charities, appointees, who would receive estate, interest or title from the donors.

One of appellant's arguments regarding the invalidity of Karl's exercise of the power of appointment is that it gave the charities power to terminate the trust. Appellant directs the court's attention to the definition of the word "power" in the section of the Property Code dealing with powers of appointment:

> *"Power" means the authority* to appoint or designate the recipient of property, to invade or consume property, to alter, amend or revoke an instrument under which an estate or trust is created and held, and *to terminate a right or interest under an estate or trust,* and any authority remaining after a partial release of power.

TEX.PROP.CODE ANN. § 181.001(2) (Vernon 1995) (emphasis added). Appellant asserts that the testamentary power of appointment thus included the authority to terminate the trust, based on this definition of power. However, this definition delineates all of the potential exercises of a power of appointment, without reference to any particular instrument that could limit or prohibit some exercises of the power.

Whatever the theoretical powers available, all of them were not available to Karl Nowlin in practical terms. The trust was irrevocable, for example, which makes meaningless any purported power to "alter, amend or revoke" the instrument under which the trust was created. Contrary to appellant's assertion, the terms of the trust agreement limited the power of appointment only to designation in the will of qualified beneficiaries and did not allow any right to terminate an interest under the trust.

### II. Express Language of the Will

As previously observed, Karl's will is silent about distribution. Therefore, it does not expressly require the trustee to make a distribution of the property subject to the power of appointment prior to the expiration of

two years following the death of the last to die of the grantors. We conclude there is nothing on the face of Karl's will that renders the exercise of his power of appointment invalid.

## III. Probate Law

■ Appellant correctly notes that under the Probate Code, title to property vests in the beneficiary immediately upon a testator's death. TEX.PROB.CODE ANN. § 37 (Vernon Supp.1995). He interprets this to mean that a testamentary power of appointment, unless distribution is expressly delayed, entitles the appointee to receive distribution of the appointed trust property as of the death of the power holder.

No authority is cited to support this proposition. Indeed, there is no Texas case on point. Yet even if the Court looks only to the provisions of the will, the appointed property may be legitimately subject to an intervening claim which delays its distribution. To vest is not necessarily to distribute immediately. A "vested interest" is a present right or title to a thing, which carries with it an existing right of alienation, even though the right to possession or enjoyment may be postponed to some uncertain time in the future. BLACK'S LAW DICTIONARY 1402 (5th ed. 1979). As the donee, Karl Nowlin did not have title to any property in the trust. The only thing that he could appoint was a future right to the remainder of any property in the trust.

An out-of-state case illustrates this point well. *See Rosenthal v. First Nat'l Bank*, 40 Ill.2d 266, 239 N.E.2d 826 (1968). In *Rosenthal*, a testator created an express trust for his son, giving his son a testamentary power of appointment, and bequeathing the income from the trust to his widow for life. The son died during his mother's lifetime, and his will appointed the remainder of the trust to a hospital. The court held that this appointment was valid, and noted:

> Although distribution of the principal would have to be postponed until the widow's death, this would in no way prevent the interest of the hospital, as the appointee, from vesting at the time of [the son's] death. His appointment by will created an

immediate vested remainder in the hospital, possession only being postponed.

*Id.* 239 N.E.2d at 829. Accordingly, the court may find that the charities' interest in the appointed property vested at the instant of Karl Nowlin's death, but that their possession of it is postponed until two years following the death of Mary Nowlin.

Appellant also overlooks an important word in Karl's will: "I hereby appoint all of the *remaining* property in the Trust created by the Trust Agreement over which I have special power of appointment...." (Emphasis added.) The only property which Karl appointed was that which would be "remaining" in the trust. As appellant acknowledges, the trust agreement provided for *inter vivos* needs of the grantors, including liquidity to pay debts, taxes, and expenses of the estates. There was no guarantee of any property remaining in the trust when it came time to distribute.

We conclude that probate law did not require an immediate distribution of the remaining property in the trust, even though a future right vested immediately in the appointees.

## IV. Reading the Will and Trust Agreement Together

■ In general, a will and a nontestamentary instrument may be construed together. 95 C.J.S. *Wills* § 624 (1957). A will may be construed in connection with a writing to which it refers and whose terms it incorporates. 74 TEX.JUR.3RD *Wills* § 112 (1990). Karl Nowlin's will specifically refers to the trust agreement, and incorporates its terms with respect to the power of appointment.

■ Texas courts have held that when a power of appointment is exercised, and a person takes by that power, he takes "as if the power and the instrument executing the power had been incorporated in one instrument." *G.A.C. Halff Found. v. Calvert*, 281 S.W.2d 178, 183 (Tex.Civ.App.—San Antonio 1955, writ ref'd n.r.e.); *accord In re Stern's Will*, 99 N.Y.S.2d 659, 662 (N.Y.Sup.Ct.1950) (holding that a trust agreement containing a

testamentary power of appointment must be construed with the will of the testator).

Construing the will and the trust as one instrument, the terms of the trust itself govern distribution. In yet another argument that immediate distribution is required, appellant notes that section 1.7 of the trust agreement provides for the continuation of unappointed property, but not of appointed property. This clause, however, deals with the ultimate disposition of property, not the timing of its distribution. Special provisions need not be made regarding appointed property because it automatically remains in the trust until termination.

Appellant correctly states that upon termination as to appointed property, a trustee is authorized only to "wind up the affairs of the trust and to make distribution of the assets to the appropriate beneficiaries." TEX.PROP.CODE ANN. § 112.052 (Vernon 1995). However, Karl Nowlin's death did not terminate the trust. The terms of the trust specify that it terminates two years following the death of the last to die of the grantors, or when the beneficiary reaches age 35, whichever is later. Karl Nowlin can never reach the age of 35; thus the trust will terminate two years following Mary Nowlin's death. At that time, the trustee must wind up the affairs of the trust and distribute all of the assets.

### Conclusion

Whether we read only the will or the will and trust agreement together, we hold that Karl Nowlin's exercise of his special power of appointment was valid. It did not require the trustee to make a distribution of the property subject to the power of appointment prior to the expiration of two years following the death of the last to die of the grantors.

We overrule appellant's first two points of error and affirm the judgments of the trial court.