Reversed and Remanded; Plurality and Concurring and Dissenting Opinions
filed October 28, 2004









Reversed and Remanded; Plurality and Concurring and
Dissenting Opinions filed October 28, 2004.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-01062-CV

____________

 

TRIBBLE
& STEPHENS CO., Appellant

 

V.

 

RGM
CONSTRUCTORS, L.P., Appellee



 



 

On Appeal from the County Civil Court at Law No. 3

Harris County, Texas

Trial Court Cause No. 713,187



 



 

C O N C U R R I N G   A N D  
D I S S E N T I N G   O P I N I O
N

I concur in the court=s
disposition of the challenges asserted by appellant Tribble & Stephens Co.
(AT&S@) to the
trial court=s summary judgment in favor of
appellee RGM Constructors, L.P. (ARGM@) on
T&S=s claims
under the Texas Deceptive Trade Practices Act (ADTPA@) and to
the trial court=s order
granting sanctions against T&S on the DTPA claims.  In all other respects, I respectfully
dissent.  








The court holds that the trial
court erred in (1) denying T&S=s motion
for summary judgment on the stated grounds that fact issues exist as to the
intent of the parties to incorporate certain condition-precedent language of
the General Conditions into the subcontract; (2) granting RGM=s motion
for summary judgment on its contract claim; and (3) striking portions of
T&S=s
summary-judgment evidence.  These rulings
by the trial court should be affirmed.

T&S=s Motion for
Summary Judgment

The plurality concludes fact issues exist regarding the
intent of the parties to incorporate the condition-precedent language of
paragraph 4.3.2 of the General Conditions into the subcontract.  The plurality=s analysis is flawed because this
language from the General Conditions was not incorporated into the parties= agreement.  Because RGM did not agree to be bound by this
alleged condition-precedent, the trial court did not err in denying T&S=s motion for summary judgment. 

The subcontract=s Aflow down@ provision did not incorporate all of
the terms of the General Conditions into the subcontract.  The plain language of article 1.2 of the
subcontract speaks only to the work to be performed by the subcontractor.  It does not address the dispute-resolution clause
contained in paragraph 4.3.2.  Because
the subcontract does not incorporate the dispute-resolution provision, this
provision is not part of the parties= agreement.  Although certain provisions of the
subcontract cannot be construed without reference to specific provisions of the
prime contract (and its General Conditions), this does not mean that the
parties incorporated the entirety of that document and all of its terms and
conditions into the subcontract.  See
LeBlanc, Inc. v. Gulf Bitulithic Co., 412 S.W.2d 86, 93 (Tex. Civ. App.CTyler 1967, writ ref=d n.r.e.) (A[T]he clear inference is that the
parties did not intend to incorporate all provisions of the prime contract.@). 
The parties did not agree that RGM had to submit the payment claim made
in this case to the architect as a condition precedent to pursuing litigation
against T&S.








The plurality=s analysis conflicts with controlling precedent.  See Seale v. Roy M. Mitchell Contracting
Co., 321 S.W.2d 149, 150B51 (Tex. Civ. App.CAustin 1959, writ ref=d). 
When parties to a subcontract incorporate only the provisions of the
principal contract that apply to the subcontractor=s work, the subcontract does not
incorporate any dispute-resolution provision contained in the principal
contract.  See id. at 150B51. 
In Seale, the general contractor=s contract with the owner contained
provisions for arbitrating disputes between the owner and the general
contractor.  See id. at 150.  Arbitration was a condition precedent to
litigation.  See id.  The subcontractor=s contract stated that the
subcontractor would A>comply with all terms and conditions pertaining
to his part of the work as contained in the contract between the general contractor
and the owner.=@  See id. 
The court held that the arbitration provision was not incorporated into
the subcontract because the language of the subcontract did not incorporate the
provision.  See id. at 151.  The incorporation language related only to
the performance of the work the subcontractor had contracted to do, and the
arbitration provision did not fit into that classification.  See id. 

Article 1.2 of the subcontract states: A[RGM] binds [it]self to T&S for
the performance of [RGM=s] work in the same manner as T&S is bound to Owner for
such performance under T&S=s contract with Owner.@ 
The plain language of the clause speaks only about the work to be
performed; it does not relate to or address the dispute-resolution clause.  Under the reasoning in Seale, because
the dispute-resolution clause from the prime contract is not incorporated into
the subcontract, RGM was not required to submit its claim to the architect as a
condition precedent to litigation.

Article 8 of the subcontract demonstrates how the subcontract
could have incorporated all the terms of the General Conditions.  T&S=s obligations to RGM are set forth in
Article 8.1, which states:








T&S agrees to be bound to [RGM] by all the
obligations that Owner assumes to T&S under the Contract Documents and by
all provisions thereof affording remedies and redress to T&S from Owner insofar
as applicable to this Subcontract.[1]


The purpose of this language was to incorporate the referenced terms and
conditions of the prime contract and General Conditions for RGM=s benefit.  RGM did not agree to be bound to T&S for
all the obligations that T&S owed to the owner under the contract documents
or by the provisions of those documents that afford remedies and redress to the
owner from T&S.  T&S, however,
expressly agreed to be bound to RGM in this manner.  Because this provision is not reciprocal, it
imposes no such obligation on RGM to T&S. 
Simply stated, RGM is not bound by provisions of the General Conditions
that are not included in the subcontract or specifically incorporated
therein.  Under the terms of the subcontract,
RGM was bound to T&S in the same manner as T&S was bound to the owner
only for RGM=s performance of its part of the work
under the subcontract.  RGM was bound to
T&S in relation to those provisions addressing the performance of the work,
but it was not bound by the other provisions of the prime contract or the
General Conditions, such as the dispute resolution provision.  

The Aflow down@ provision is unambiguous with respect to whether it
incorporates the dispute-resolution provision into the subcontract.  Absent language in the subcontract
incorporating all of the terms and conditions from the General Conditions, this
provision did not become part of the parties= agreement.  Because the plain language of the subcontract
does not incorporate the dispute resolution provision, no ambiguity or fact
issue exists as to the intent of the parties with respect to whether they
intended RGM to be bound to this provision. 
They did not.  Therefore,
compliance with this provision was not a condition precedent to RGM=s entitlement to payment under the
subcontract.








The only condition precedent to RGM=s entitlement to payment under the
subcontract is found in article 2.1 of that agreement, which states that Areceipt of payment from the Owner by
T&S shall be an express CONDITION PRECEDENT to payment by T&S to [RGM].@ 
T&S was paid in full by the owner, and so this condition was fully
satisfied.  The only issue with respect
to RGM=s performance under the parties= agreement relates to offsets in the
formed concrete surfaces.  As detailed
below, RGM=s summary-judgment evidence
conclusively established RGM=s compliance with the applicable 1/4 inch tolerance
prescribed by the parties= agreement.  For these
reasons, the trial court properly denied T&S=s motion for summary judgment, and
this court should affirm that ruling.

Summary
Judgment on RGM=s Contract Claim

The plurality concludes that the trial court erred in
granting RGM=s motion for summary judgment on its
contract claim on the stated grounds that fact issues exist concerning RGM=s performance under the
subcontract.  RGM fulfilled the
unambiguous terms of the subcontract and is therefore entitled to payment in
full.  Accordingly, the trial court was
correct in granting RGM=s motion for summary judgment, and this court errs in holding
otherwise.

The only issue with respect to RGM=s performance is related to offsets
in the formed concrete surfaces.  The
contract documents provided for a 1/4 inch tolerance for these offsets, and RGM=s summary-judgment evidence
conclusively established RGM=s compliance with this tolerance.  T&S=s summary-judgment evidence was based
on inapplicable tolerances and standards of measurement and failed to rebut RGM=s evidence or to raise a fact issue
concerning the level of RGM=s performance under the terms of the subcontract.  








Under the applicable specifications, RGM was required to
correct offsets to 1/4 inch or less.  RGM
substantially completed the formwork, and all offsets were within 1/4
inch.  Still, T&S complained about
RGM=s work and asked RGM to further
reduce the offsets.  In its Adefault letter@ to RGM, T&S pointed RGM to the
specifications in Section 03300 and requested that RGM return to the jobsite to
perform remedial work as prescribed in that section.[2]  This would have required RGM to further
reduce the offsets to a smooth and flat surface.  Section 03300, however, does not apply to RGM=s work under the parties= agreement.  Under the express terms of Attachment A to
the subcontract, only section 03100 applies to RGM=s work.

No Ambiguity as to Applicable
Specifications

Although neither party asserts an ambiguity with respect to
the applicable specifications, the plurality concludes that the subcontract is
ambiguous on this issue.  It is not.  Under the terms of the subcontract, RGM
agreed Ato perform the following part of the
Work (as defined in the Contract Documents) which T&S has contracted with
Owner to provide on the Project: CONCRETE FORMWORK.@ 
Attachment A to the Subcontract directs RGM to ASpecifications Section 3100 of the
Contract Documents.@  These specifications
have a definite and certain meaning and one that the parties do not
dispute.  These specifications mean what
they say.  The interpretations the
plurality promotes as arguably applicable to RGM=s work do not create an ambiguity.  Attachment A clearly states that Section
03100, not Section 03300, applies to RGM=s work. 








The best indication of the parties= intent with respect to the specifications
applicable to RGM=s work is the parties= express reference to Section 03100
and their omission of any reference to Section 03300 in their written
agreement.  Because this part of the
subcontract is capable of a specific and certain legal meaning, there is no
need to resort to the rules of contract construction or parol evidence.  We should simply interpret the parties= agreement to mean what it says and
construe it accordingly.

The plurality acknowledges that the subcontract expressly
directs RGM to the specifications found in Section 03100 and that the parties= agreement contains no reference to
Section 03300, but nevertheless concludes that the unlisted section might apply
to RGM=s work.  The plurality reasons that if this court were
to limit the specifications to the section the parties identified as controlling
(Section 03100), then other parts of the contract would be rendered
meaningless.  This conclusion is one
which neither party has reached in more than 150 pages of briefing and ten
post-submission letter briefs.  The
intentions of the parties can easily be defeated when a court strains to
declare an ambiguity that no party has asserted or argued.  

Though the parties in this case have disagreed on most
things, neither has alleged this part of their agreement is ambiguous, and
neither party has identified the alleged ambiguities on which the plurality=s analysis is based.  Although a court can conclude that a contract
is ambiguous even in the absence of such a pleading by either party,[3]
there is no justification for doing so in this case.  The part of the agreement at issue is not
ambiguous because the words the parties chose have a definite and certain legal
meaning and do not support more than one reasonable interpretation.  See Columbia Gas Transmission Corp. v. New
Ulm Ltd., 940 S.W.2d 587, 589B92 (Tex. 1996).  AConflicting interpretations of a
contract and even unclear or uncertain language, do not necessarily mean a
contract is ambiguous.@  Appleton v.
Appleton, 76 S.W.3d 78, 84 (Tex. App.CHouston [14th Dist.] 2002, no
pet.).  The plurality has failed to
identify more than one reasonable interpretation of the parties= agreement, and there is no
uncertainty in this part of their contract. 
The parties intended only the specifications in Section 03100 to apply
to RGM=s work, and the plurality errs in
finding an ambiguity on this issue. 








Because the subcontract is not ambiguous as to the
specifications applicable to RGM=s work, there is no fact issue as to
the intent of the parties on this matter. 
See J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 229 (Tex.
2003) (stating a fact issue as to the parties= intent is created if the contract is
found to be ambiguous).  A comparison of
RGM=s performance to the level of work
required in the subcontract demonstrates that RGM established compliance with
all of its obligations under the parties= agreement as a matter of law.

Improper Reliance on Architect=s Statements

The plurality relies on the
statements of the project architect, Stuart Campbell, to reverse summary
judgment on RGM=s
contract claims.[4]  The plurality errs in doing so because this
evidence, whether presented by deposition or affidavit, was improper and
inadmissible and, in any event, does not create a fact issue precluding summary
judgment.  The trial court properly
struck Campbell=s
statements from the summary-judgment record because they were not relevant to
any alleged fact issue in this case.  RGM=s rights
and obligations under the subcontract are determined by what the subcontract
says, not by what Campbell says they mean.








T&S identified two alleged fact issues that purportedly
precluded summary judgment: (1) the extent to which the concrete work was to be
exposed to public view, which impacts the resulting tolerance levels for
irregularities, and (2) whether RGM=s finished work was within those
tolerances.  The parties do not dispute
that the surfaces were to have received a spray-on textured surface.  Under the contract documents, such surfaces
are Class B surfaces, which are subject to 1/4 inch offsets.  The contract documents do not specifically
designate a class of surface for exposed concrete.  Whether the surface was a Class A surface, as
T&S contends, or a Class B surface, as RGM contends, is not a fact question
but a question of law to be determined from the subcontract, not from the
architect=s opinion.  Campbell=s professional opinion of RGM=s work, according to his
interpretation of the contract=s requirements, is immaterial.  See Sun Oil Co. v. Madeley, 626 S.W.2d
726, 732 (Tex. 1981) (AWhere the meaning of the contract is plain and unambiguous, a
party=s construction is immaterial.@); Nowlin v. Frost Nat=l Bank, 908 S.W.2d 283, 286 (Tex. App.CHouston [1st Dist.] 1995, no writ)
(in the absence of a finding of ambiguity, affidavit stating meaning of
contractual language is Airrelevant@).  If the contract
does not designate the surfaces to be Class A, Campbell=s opinion that they are hardly
resolves the issue.  Looking to the parties= agreement, the surfaces are
unambiguously Class B because they were to receive a spray-on textured surface.

Campbell=s affidavit testimony directly contradicts Section 03100=s express incorporation of ACI-347,
which sets out the applicable tolerances for abrupt irregularities such as
offsets in formed concrete surfaces. 
Campbell=s affidavit testimony as to what was required under the
contract documents cannot control over the express language of the contract
documents.  Whether RGM fully performed
under the terms of the subcontract depends only on a comparison of the work
performed by RGM and the level of work required by the subcontract.  Campbell=s opinion as to the contract
requirements is immaterial in determining if RGM performed under the parties= agreement.  Likewise, Campbell=s rejection of RGM=s work, based on inapplicable
specifications derived from his interpretation of the contract, is not germane
to the legal issue presented by RGM=s summary-judgment motion.  Therefore, the trial court did not err in
excluding Campbell=s statements from T&S=s summary-judgment evidence.  Deposition testimony that Campbell believed
RGM=s work did not meet contract
specifications based on his misinterpretation of the unambiguous contract does
not raise a fact issue precluding summary judgment.

Because RGM established compliance with all of its
obligations under the subcontract and T&S failed to raise any material fact
issues, the trial court correctly entered summary judgment on RGM=s contract claim.  This court should affirm that ruling.








Conclusion

T&S=s condition precedent argument fails because the Aflow down@ provision of the subcontract did not
require RGM to submit its claim for payment to the architect.  Accordingly, the trial court correctly denied
T&S=s motion for summary judgment.  The trial court also correctly granted RGM=s motion for summary judgment on its
contract claim because T&S failed to rebut RGM=s evidence or raise a material fact
issue concerning RGM=s performance under the subcontract.  The trial court did not err when it excluded
portions of T&S=s summary-judgment evidence because the architect=s statements were not relevant to the
factual issues in the case.  Finally,
excerpts from Campbell=s deposition regarding his incorrect interpretation of the
parties= contract does not create a fact
issue precluding summary judgment.  For
these reasons, this court should affirm both the trial court=s denial of T&S=s motion for summary judgment and the
trial court=s grant of RGM=s motion for summary judgment on RGM=s contract claim.[5]


 

/s/        Kem Thompson Frost

Justice

 

Judgment rendered and
Plurality and Concurring and Dissenting Opinions filed
October 28, 2004.

 

Panel consists of Justices
Edelman, Frost and Seymore.  (Seymore,
J., plurality.)  (Edelman, J., concurs in
result only.)

 

 











[1]  Emphasis
added.





[2]  T&S
insisted that the concrete formwork needed to be Afloated@ in an Aacceptable
manner@ before these surfaces could be painted and that if
RGM did not commence the work within 72 hours, T&S would retain a third
party to do this work.  The work
described in the letterCAfilling and floating@Cis not
formwork and was not within the scope of RGM=s work
under the parties= agreement. 





[3]  See Sage
Street Assocs. v. Northdale Const. Co., 864 S.W.2d 438, 445 (Tex. 1993).





[4]  See
plurality opinion, footnote 15.





[5]  For reasons
stated in the plurality opinion, the court is correct in reversing and remanding
the trial court=s summary judgment in favor of RGM on T&S=s DTPA claims and the trial court=s order granting sanctions against T&S on T&S=s DTPA claims.