KEM THOMPSON FROST, Justice,
concurring and dissenting.
I concur in the court’s disposition of the challenges asserted by appellant Tribble & Stephens Co. (“T & S”) to the trial court’s summary judgment in favor of appellee RGM Constructors, L.P. (“RGM”) on T & S’s claims under the Texas Deceptive Trade Practices Act (“DTPA”) and to the trial court’s order granting sanctions against T & S on the DTPA claims. In all other respects, I respectfully dissent.
The court holds that the trial court erred in (1) denying T & S’s motion for summary judgment on the stated grounds that fact issues exist as to the intent of the parties to incorporate certain condition-precedent language of the General Conditions into the subcontract; (2) granting RGM’s motion for summary judgment on *656 its contract claim; and (3) striking portions of T & S’s summary-judgment evidence. These rulings by the trial court should be affirmed.
T & S’s Motion FOR SUMMARY Judgment
The plurality concludes fact issues exist regarding the intent of the parties to incorporate the condition-precedent language of paragraph 4.3.2 of the General Conditions into the subcontract. The plurality’s analysis is flawed because this language from the General Conditions was not incorporated into the parties’ agreement. Because RGM did not agree to be bound by this alleged condition-precedent, the trial court did not err in denying T & S’s motion for summary judgment.
The subcontract’s “flow down” provision did not incorporate all of the terms of the General Conditions into the subcontract. The plain language of article 1.2 of the subcontract speaks only to the work to be performed by the subcontractor. It does not address the dispute-resolution clause contained in paragraph 4.3.2. Because the subcontract does not incorporate the dispute-resolution provision, this provision is not part of the parties’ agreement. Although certain provisions of the subcontract cannot be construed without reference to specific provisions of the prime contract (and its General Conditions), this does not mean that the parties incorporated the entirety of that document and all of its terms and conditions into the subcontract. See LeBlanc, Inc. v. Gulf Bitulithic Co., 412 S.W.2d 86, 93 (Tex.Civ.App.-Tyler 1967, writ refd n.r.e.) (“[T]he clear inference is that the parties did not intend to incorporate all provisions of the prime contract.”). The parties did not agree that RGM had to submit the payment claim made in this ease to the architect as a condition precedent to pursuing litigation against T & S.
The plurality’s analysis conflicts with controlling precedent. See Seale v. Roy M. Mitchell Contracting Co., 321 S.W.2d 149, 150-51 (Tex.Civ.App.-Austin 1959, writ ref'd). When parties to a subcontract incorporate only the provisions of the principal contract that apply to the subcontractor’s work, the subcontract does not incorporate any dispute-resolution provision contained in the principal contract. See id. at 150-51. In Seale, the general contractor’s contract with the owner contained provisions for arbitrating disputes between the owner and the general contractor. See id. at 150. Arbitration was a condition precedent to litigation. See id. The subcontractor’s contract stated that the subcontractor would “ ‘comply with all terms and conditions pertaining to his part of the work as contained in the contract between the general contractor and the owner.’ ” See id. The court held that the arbitration provision was not incorporated into the subcontract because the language of the subcontract did not incorporate the provision. See id. at 151. The incorporation language related only to the performance of the work the subcontractor had contracted to do, and the arbitration provision did not fit into that classification. See id.
Article 1.2 of the subcontract states: “[RGM] binds [it]self to T & S for the performance of [RGM’s] work in the same manner as T & S is bound to Owner for such performance under T & S’s contract with Owner.” The plain language of the clause speaks only about the work to be performed; it does not relate to or address the dispute-resolution clause. Under the reasoning in Seale, because the dispute-resolution clause from the prime contract is not incorporated into the subcontract, RGM was not required to submit its claim to the architect as a condition precedent to litigation.
*657 Article 8 of the subcontract demonstrates how the subcontract could have incorporated all the terms of the General Conditions. T & S’s obligations to RGM are set forth in Article 8.1, which states:
T & S agrees to be bound to [RGM] by all the obligations that Owner assumes to T & S under the Contract Documents and by all provisions thereof affording remedies and redress to T & S from Owner insofar as applicable to this Subcontract.[1]
The purpose of this language was to incorporate the referenced terms and conditions of the prime contract and General Conditions for RGM’s benefit. RGM did not agree to be bound to T & S for all the obligations that T & S owed to the owner under the contract documents or by the provisions of those documents that afford remedies and redress to the owner from T & S. T & S, however, expressly agreed to be bound to RGM in this manner. Because this provision is not reciprocal, it imposes no such obligation on RGM to T & S. Simply stated, RGM is not bound by provisions of the General Conditions that are not included in the subcontract or specifically incorporated therein. Under the terms of the subcontract, RGM was bound to T & S in the same manner as T & S was bound to the owner only for RGM’s performance of its part of the work under the subcontract. RGM was bound to T & S in relation to those provisions addressing the performance of the work, but it was not bound by the other provisions of the prime contract or the Genei’al Conditions, such as the dispute resolution provision.
The “flow down” provision is unambiguous with respect to whether it incorporates the dispute-resolution provision into the subcontract. Absent language in the subcontract incorporating all of the terms and conditions from the General Conditions, this provision did not become part of the parties’ agreement. Because the plain language of the subcontract does not incorporate the dispute resolution provision, no ambiguity or fact issue exists as to the intent of the parties with respect to whether they intended RGM to be bound to this provision. They did not. Therefore, compliance with this provision was not a condition precedent to RGM’s entitlement to payment under the subcontract.
The only condition precedent to RGM’s entitlement to payment under the subcontract is found in article 2.1 of that agreement, which states that “receipt of payment from the Owner by T & S shall be an express CONDITION PRECEDENT to payment by T & S to [RGM].” T & S was paid in full by the owner, and so this condition was fully satisfied. The only issue with respect to RGM’s performance under the parties’ agreement relates to offsets in the formed concrete surfaces. As detailed below, RGM’s summary-judgment evidence conclusively established RGM’s compliance with the applicable 1/4 inch tolerance prescribed by the parties’ agreement. For these reasons, the trial court properly denied T & S’s motion for summary judgment, and this court should affirm that ruling.
SummaRY Judgment on RGM’s Contract Claim
The plurality concludes that the trial court erred in granting RGM’s motion for summary judgment on its contract claim on the stated grounds that fact issues exist concerning RGM’s performance under the subcontract. RGM fulfilled the unambiguous terms of the subcontract and is therefore entitled to payment in full. Accordingly, the trial court was correct in granting RGM’s motion for summary judgment, and this court errs in holding otherwise.
*658 The only issue with respect to RGM’s performance is related to offsets in the formed concrete surfaces. The contract documents provided for a 1/4 inch tolerance for these offsets, and RGM’s summary-judgment evidence conclusively established RGM’s compliance with this tolerance. T & S’s summary-judgment evidence was based on inapplicable tolerances and standards of measurement and failed to rebut RGM’s evidence or to raise a fact issue concerning the level of RGM’s performance under the terms of the subcontract.
Under the applicable specifications, RGM was required to correct offsets to 1/4 inch or less. RGM substantially completed the formwork, and all offsets were within 1/4 inch. Still, T & S complained about RGM’s work and asked RGM to further reduce the offsets. In its “default letter” to RGM, T & S pointed RGM to the specifications in Section 03300 and requested that RGM return to the jobsite to perform remedial work as prescribed in that section.[2] This would have required RGM to further reduce the offsets to a smooth and flat surface. Section 03300, however, does not apply to RGM’s work under the parties’ agreement. Under the express terms of Attachment A to the subcontract, only section 03100 applies to RGM’s work.
No Ambiguity as to Applicable Specifications
Although neither party asserts an ambiguity with respect to the applicable specifications, the plurality concludes that the subcontract is ambiguous on this issue. It is not. Under the terms of the subcontract, RGM agreed “to perform the following part of the Work (as defined in the Contract Documents) which T & S has contracted with Owner to provide on the Project: CONCRETE FORMWORK.” Attachment A to the Subcontract directs RGM to “Specifications Section 3100 of the Contract Documents.” These specifications have a definite and certain meaning and one that the parties do not dispute. These specifications mean what they say. The interpretations the plurality promotes as arguably applicable to RGM’s work do not create an ambiguity. Attachment A clearly states that Section 03100, not Section 03300, applies to RGM’s work.
The best indication of the parties’ intent with respect to the specifications applicable to RGM’s work is the parties’ express reference to Section 03100 and their omission of any reference to Section 03300 in their written agreement. Because this part of the subcontract is capable of a specific and certain legal meaning, there is no need to resort to the rules of contract construction or parol evidence. We should simply interpret the parties’ agreement to mean what it says and construe it accordingly.
The plurality acknowledges that the subcontract expressly directs RGM to the specifications found in Section 03100 and that the parties’ agreement contains no reference to Section 03300, but nevertheless concludes that the unlisted section might apply to RGM’s work. The plurality reasons that if this court were to limit the specifications to the section the parties identified as controlling (Section 03100), then other parts of the contract would be rendered meaningless. This conclusion is one which neither party has reached in *659 more than 150 pages of briefing and ten post-submission letter briefs. The intentions of the parties can easily be defeated when a court strains to declare an ambiguity that no party has asserted or argued.
Though the parties in this case have disagreed on most things, neither has alleged this part of their agreement is ambiguous, and neither party has identified the alleged ambiguities on which the plurality’s analysis is based. Although a court can conclude that a contract is ambiguous even in the absence of such a pleading by either party,[3] there is no justification for doing so in this case. The part of the agreement at issue is not ambiguous because the words the parties chose have a definite and certain legal meaning and do not support more than one reasonable interpretation. See Columbia Gas Transmission Corp. v. New Ulm Ltd., 940 S.W.2d 587, 589-92 (Tex.1996). “Conflicting interpretations of a contract and even unclear or uncertain language, do not necessarily mean a contract is ambiguous.” Appleton v. Appleton, 76 S.W.3d 78, 84 (Tex.App.-Houston [14th Dist.] 2002, no pet.). The plurality has failed to identify more than one reasonable interpretation of the parties’ agreement, and there is no uncertainty in this part of their contract. The parties intended only the specifications in Section 03100 to apply to RGM’s work, and the plurality errs in finding an ambiguity on this issue.
Because the subcontract is not ambiguous as to the specifications applicable to RGM’s work, there is no fact issue as to the intent of the parties on this matter. See J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 229 (Tex.2003) (stating a fact issue as to the parties’ intent is created if the contract is found to be ambiguous). A comparison of RGM’s performance to the level of work required in the subcontract demonstrates that RGM established compliance with all of its obligations under the parties’ agreement as a matter of law.
Improper Reliance on Architect’s Statements
The plurality relies on the statements of the project architect, Stuart Campbell, to reverse summary judgment on RGM’s contract claims.[4] The plurality errs in doing so because this evidence, whether presented by deposition or affidavit, was improper and inadmissible and, in any event, does not create a fact issue precluding summary judgment. The trial court properly struck Campbell’s statements from the summary-judgment record because they were not relevant to any alleged fact issue in this case. RGM’s rights and obligations under the subcontract are determined by what the subcontract says, not by what Campbell says they mean.
T & S identified two alleged fact issues that purportedly precluded summary judgment: (1) the extent to which the concrete work was to be exposed to public view, which impacts the resulting tolerance levels for irregularities, and (2) whether RGM’s finished work was within those tolerances. The parties do not dispute that the surfaces were to have received a spray-on textured surface. Under the contract documents, such surfaces are Class B surfaces, which are subject to 1/4 inch offsets. The contract documents do not specifically designate a class of surface for exposed concrete. Whether the surface was a Class A surface, as T & S contends, or a Class B surface, as RGM contends, is not a fact question but a question of law to be determined from the subcontract, not from the architect’s opinion. Campbell’s professional opinion of RGM’s work, according to his interpreta *660 tion of the contract’s requirements, is immaterial. See Sun Oil Co. v. Madeley, 626 S.W.2d 726, 732 (Tex.1981) (“Where the meaning of the contract is plain and unambiguous, a party’s construction is immaterial.”); Nowlin v. Frost Nat’l Bank, 908 S.W.2d 283, 286 (Tex.App.-Houston [1st Dist.] 1995, no writ) (in the absence of a finding of ambiguity, affidavit stating meaning of contractual language is “irrelevant”). If the contract does not designate the surfaces to be Class A, Campbell’s opinion that they are hardly resolves the issue. Looking to the parties’ agreement, the surfaces are unambiguously Class B because they were to receive a spray-on textured surface.
Campbell’s affidavit testimony directly contradicts Section 03100’s express incorporation of ACI-347, which sets out the applicable tolerances for abrupt irregularities such as offsets in formed concrete surfaces. Campbell’s affidavit testimony as to what was required under the contract documents cannot control over the express language of the contract documents. Whether RGM fully performed under the terms of the subcontract depends only on a comparison of the work performed by RGM and the level of work required by the subcontract. Campbell’s opinion as to the contract requirements is immaterial in determining if RGM performed under the parties’ agreement. Likewise, Campbell’s rejection of RGM’s work, based on inapplicable specifications derived from his interpretation of the contract, is not germane to the legal issue presented by RGM’s summary-judgment motion. Therefore, the trial court did not err in excluding Campbell’s statements from T & S’s summary-judgment evidence. Deposition testimony that Campbell believed RGM’s work did not meet contract specifications based on his misinterpretation of the unambiguous contract does not raise a fact issue precluding summary judgment.
Because RGM established compliance with all of its obligations under the subcontract and T & S failed to raise any material fact issues, the trial court correctly entered summary judgment on RGM’s contract claim. This court should affirm that ruling.
Conclusion
T & S’s condition precedent argument fails because the “flow down” provision of the subcontract did not require RGM to submit its claim for payment to the architect. Accordingly, the trial court correctly denied T & S’s motion for summary judgment. The trial court also correctly granted RGM’s motion for summary judgment on its contract claim because T & S failed to rebut RGM’s evidence or raise a material fact issue concerning RGM’s performance under the subcontract. The trial court did not err when it excluded portions of T & S’s summary-judgment evidence because the architect’s statements were not relevant to the factual issues in the case. Finally, excerpts from Campbell’s deposition regarding his incorrect interpretation of the parties’ contract does not create a fact issue precluding summary judgment. For these reasons, this court should affirm both the trial court’s denial of T & S’s motion for summary judgment and the trial court’s grant of RGM’s motion for summary judgment on RGM’s contract claim.[5]

. Emphasis added.

. T & S insisted that the concrete formwork needed to be "floated” in an "acceptable manner" before these surfaces could be painted and that if RGM did not commence the work within 72 hours, T & S would retain a third party to do this work. The work described in the letter- — "filling and floating” — is not formwork and was not within the scope of RGM’s work under the parties’ agreement.

. See Sage Street Assocs. v. Northdale Const. Co., 863 S.W.2d 438, 445 (Tex.1993).

. See plurality opinion, footnote 15.

. For reasons stated in the plurality opinion, the court is correct in reversing and remanding the trial court’s summary judgment in favor of RGM on T & S's DTPA claims and the trial court’s order granting sanctions against T & S on T & S’s DTPA claims.