SHRINER'S HOSPITAL FOR
CRIPPLED CHILDREN OF
TEXAS et al., Petitioners,

v.

Ola Mae STAHL et al., Respondents.

No. B–8611.

Supreme Court of Texas.

Dec. 31, 1980.

Rehearing Denied Jan. 28, 1981.

Mark White, Atty. Gen., Amie Rodnick, Asst. Atty. Gen., Austin, Tinsman & Houser, H. David Peeples, San Antonio, Wynn, Brown, Mack, Renfro & Thompson, Henry C. Meyer, Fort Worth, James H. Walker and Leonard E. Choate, Dallas, Pat Beard, Waco, for petitioners.

Philip E. Hamner, San Antonio, for respondents.

SPEARS, Justice.

This is a will construction case. The issues are (1) whether a specific devise of property was adeemed by extinction when the testatrix sold the subject property before her death and, (2) if adeemed, whether the note received from the sale of that property passes by partial intestacy or under the residuary clause of the will. The term ademption describes the extinction of a specific bequest or devise because of the disappearance of or disposition of the subject matter given from the estate of the testator in his lifetime.

The trial court rendered judgment that the devise was adeemed and passed under the residuary clause of the will. The court of civil appeals reversed and remanded, holding that though the devise was adeemed, it was the intent of the testatrix that the note received in the sale pass to her heirs under the laws of descent and distribution by intestacy. 581 S.W.2d 227. We reverse the judgment of the court of civil appeals and affirm the judgment of the trial court.

The testatrix, Eloise Williams, executed her will on December 12, 1973 and codicils on January 23, 1974 and May 19, 1976. In the will, drafted by an attorney, paragraphs 4, 5, and 6 devised her 103 acre "home place" to nephews Jack Williams and Billy Jo Stahl and nieces Esta Germer, Joyce Dawson, and Martha Kasprzyk under these terms:

4.

I will my home place (consisting of 103 acres of land, more or less, in the A. Trevino Grant, Survey No. 11, in Wilson County, Texas) and conveyed to me by deed of record in Vol. 185, Page 327, Deed Records of Wilson County, Texas) as follows: In regard to the Northwest 40 acres of same, my nephew, Thomas J. (Jack) Williams shall have the option to purchase same by making the following payments: $2,000.00 to Julia Mattke (or to her daughters, share and share alike, if the said Julia Mattke shall predecease me); $2,000.00 to Mittie Anderson or to her husband, Fred Anderson, if the said Mittie Anderson shall predecease me; $2,000.00 to my cousin, Lillie Belle Carey, or to her husband, Jack Carey, if the said Lillie Belle Carey shall predecease me; and $1,000.00 to my nephew, Jimmy Cross (at the request of my deceased husband, Norris Williams) or to Norris Cross, if the said Jimmy Cross shall predecease me. Said option shall be exercised by the said Thomas J. (Jack) Williams within a reasonable time after my death, and in no event, later than six months after the payment by my hereinafter named executor of any and all State Inheritance Taxes and Federal Estate Taxes, that is, when the respective Governments agree as to how much tax is owed. My said nephew, Thomas J. (Jack) Williams, may encumber said 40 acres, in order to make said payments.

5.

The balance of my said home place (being the Southeast 63 acres of said tract, more or less) I will to Billy Jo Stahl, Esta Germer, Joyce Dawson and Martha Kasprzyk, share and share alike.

6.

The above named parties may take possession of said land when my Executor shall surrender such land, in his sole discretion, to such parties, and they shall thereafter receive all rents and revenues from the respective tracts of land.

After describing several specific bequests, the will provides in paragraphs 11 and 12:

11.

If any bequest shall lapse because there shall be no taker of such bequest at the time of my death, such lapsed bequest shall form and be a part of my residuary estate as next below described.

12.

All the rest, residue and remainder of my estate and property (and in this connection, all lapsed special bequests shall pass to and become a part of my residuary estate described in this paragraph) I will to Clark Murray, in Trust . . . .

The trust described in paragraph 15 was for the initial purpose of providing care and maintenance for testatrix's brother, John Dawson. Paragraphs 16 and 17 then provided that if John died, whether before or after testatrix's death, the entire trust estate, i. e., the residuary estate, would pass to the "Masonic Home or Homes for Crippled Children" for use in Texas.

16.

The Trust shall continue so long as the said John Dawson shall live, and upon his

death, the entire Trust estate (including corpus or principal, and income) shall vest in fee simple in the Masonic Home or Homes for Crippled Children, to be used only in Texas, subject to all other provisions of this Will and subject to administration of my estate.

17.

If the said John Dawson shall be deceased at the time of my death, there shall be no Trust, and my entire residuary estate, as above described in paragraph 12, shall vest in fee simple, in said Masonic Home or Homes for Crippled Children. and to be used in Texas only, subject to the above and foregoing provisions of this Will, and subject to administration.

John Dawson did predecease the testatrix; he died in September 1976. The next month, on October 5, testatrix sold the "home place" to a third party, receiving a note for $80,000.00 secured by a deed of trust and vendor's liens. Three months after the sale, on January 7, 1977, testatrix died. The executor of the will filed this suit to construe the will and determine who shall receive the proceeds of the $80,000.00 note.

We have four petitioners. Three of them, the Shriner's Hospital for Crippled Children of Texas, the Texas Scottish Rite Hospital for Crippled Children, and the Attorney General of Texas (joined as a party under Article 4412a, Tex.Rev.Civ.Stat.Ann.) contend that the court of civil appeals erred in holding that the $80,000.00 note passed by intestacy. Petitioner Irene T. Williams, Independent Executrix of the Estate of Thomas J. "Jack" Williams (who died while this case was pending in the court of civil appeals and his executrix substituted as a party), contends that the court of civil appeals erred in holding that testatrix's devise of her "home place" was adeemed. Irene Williams argues that the $80,000.00 note, remaining separate, identifiable, and uncomingled with the rest of her property, should pass not to the heirs at law by intestacy but should be apportioned to the devisees who would have taken the "home place" under the will.

We agree with the holdings of the trial court and of the court of civil appeals that the phrase in the residuary clause of the will "Masonic Home or Homes for Crippled Children" entitled the Texas Scottish Rite Hospital for Crippled Children and the Shriner's Hospital for Crippled Children to receive the bequest of the residuary clause to carry out the charitable purpose set out in the will. *See Bode v. Loeffler*, 540 S.W.2d 465 (Tex.Civ.App.—San Antonio 1976, writ ref'd). This holding is not challenged by any party here.

 We further agree with the holding that the devise of the "home place" was adeemed by extinction when the testatrix sold the property before her death. Absent a contrary intention expressed in the will, the alienation or disappearance of the subject matter of a specific bequest from the testator's estate adeems the devise or bequest. *Rogers v. Carter*, 385 S.W.2d 563, 565 (Tex.Civ.App.—San Antonio 1965, writ ref'd n. r. e.); *Burch v. McMillen*, 15 S.W.2d 86, 89 (Tex.Civ.App.—Eastland 1929, no writ). A will speaks at the time of the testator's death, and it is the estate he then possessed that passes according to the terms of that will. *Haley v. Gatewood*, 74 Tex. 281, 12 S.W. 25, 26 (1889); *Henderson v. Ryan*, 27 Tex. 670, 674 (1864).

 Although there are recognized exceptions to the ademption rule, circumstances warranting an exception do not exist here. After the testatrix sold her home place, she did not change her will during the three months after her brother died. There is no indication in the will that testatrix wished that the proceeds from the sale of the home place or any property that might be acquired through the sale or exchange of the home place pass to the devisees named in paragraphs 4 and 5 of the will. Nor was there any involuntary conversion of the subject property or sale by a guardian under circumstances in which testatrix had no capacity or opportunity to adjust her testamentary disposition. *See* Paulus, *Ademption by Extinction: Smiting*

*Lord Thurlow's Ghost*, 2 Tex.Tech.L.Rev. 195, 208–215 (1971).

All rules of construction must yield to the basic intention and purpose of the testator as reflected by the entire instrument. *Welch v. Straach*, 531 S.W.2d 319, 322 (Tex.1975); *Petsch v. Slator*, 573 S.W.2d 849, 853 (Tex.Civ.App.—Austin 1978, writ ref'd n. r. e.); *Morris v. Finkelstein*, 442 S.W.2d 452, 455 (Tex.Civ.App.—Houston [14th Dist.] 1969, n. r. e.). The intent of the testator, however, must be ascertained from the language used within the four corners of the instrument. *Welch v. Straach, supra; Huffman v. Huffman*, 161 Tex. 267, 339 S.W.2d 885, 888–9 (1960); *Repub. Nat'l Bank of Dallas v. Fredericks*, 155 Tex. 79, 283 S.W.2d 39, 42 (1955). The question is not what the testatrix intended to write, but the meaning of the words she actually used. *Rekdahl v. Long*, 417 S.W.2d 387, 389 (Tex.1967); *Kirk v. Beard*, 162 Tex. 144, 345 S.W.2d 267, 273 (1961); *In re Estate of Kirby*, 516 S.W.2d 284, 286 (Tex.Civ. App.—Waco 1974, writ ref'd n. r. e.). We do not agree with the contention that the devise of the home place did not adeem because the $80,000.00 note remained separate from and uncomingled with the rest of the testatrix's property. The will contains no mention of or reference to the $80,000.00 note, nor does the will allude to it indirectly. The courts may not redraft the will, vary or add provisions under the guise of construction of the language of the will in order to reflect some presumed intention of the testatrix. *Welch v. Straach, supra*, 531 S.W.2d at 322; *Huffman v. Huffman, supra*, 339 S.W.2d at 888; 4 Page on Wills (Lifetime Ed.) § 1617, p. 627.

Having held that the devise of the home place was adeemed by its sale, we must determine whether the $80,000.00 note received for it passes under the residuary clause of the will to the Masonic charities or, as the court of civil appeals has held, passes by partial intestacy to the heirs of the testatrix.

The testatrix was survived by four heirs at law: Ola Mae Stahl, a sister, and Esta Germer, Joyce Dawson and Martha Kasprzyk, nieces. Two devisees, not heirs at law, who would have benefited from the provisions of the will absent ademption are: Thomas J. (Jack) Williams, the testatrix's deceased husband's nephew,[1] and Billy Jo Stahl. The four named persons who would have received payments from Jack Williams are not heirs at law: Julia Mattke and Mittie Anderson, nieces of the testatrix's deceased husband; Jimmy Cross, nephew of the testatrix; and Lillie Belle Curry, a half-cousin. If the note were to pass by partial intestacy, we would have the incongruous result that only four of the nine intended recipients of the home place would receive a share of the note. Moreover, Jack Williams, who was to receive a major share of 40 acres, would receive nothing, while Ola Mae Stahl, a sister, who was to receive no part of the home place under the will would receive a fourth of the note. There is no evidence in the record from which any such intent can be inferred.

Well established rules of construction militate against partial intestacy as to the note. The mere making of a will is evidence that the testator had no intent to die intestate and creates a presumption that the testator intended to dispose of his entire estate, and that he did not intend to die intestate as to the whole or any part of his property. *Haile v. Holtzclaw*, 414 S.W.2d 916, 922 (Tex.1967); *Briggs v. Peebles*, 144 Tex. 47, 188 S.W.2d 147, 150 (1945); *Kuehn v. Bremer*, 132 S.W.2d 295, 297 (Tex.Civ. App.—Waco 1939, writ ref'd); *Cole v. Harris*, 332 S.W.2d 119, 121 (Tex.Civ.App.—Amarillo 1959, no writ). Further, if a will is open to two constructions, that interpretation will be given it which prevents intestacy. *Ferguson v. Ferguson*, 121 Tex. 119, 45 S.W.2d 1096, 1097; Annot., 79 A.L.R. 1163 (1931). Where the will contains a residuary clause, the presumption against intestacy is especially strong. *Ellet v.*

---

1. Jack Williams was not technically a devisee since the will merely gave him a limited "option" to receive the 40 acres of the home place upon the payment of certain sums of money within a specified time, but the distinction is immaterial for the purposes of this opinion.

*McCord*, 41 S.W.2d 110, 113 (Tex.Civ.App.— Austin 1931, writ ref'd); *Calloway v. Estate of Gasser*, 558 S.W.2d 571, 574 (Tex.Civ. App.—Tyler 1977, writ ref'd n. r. e.); *Knebel v. Capital Nat'l Bank in Austin*, 469 S.W.2d 458, 461 (Tex.Civ.App.—Austin 1971, writ ref'd n. r. e.); *Morris v. Finkelstein, supra,* 442 S.W.2d 452, at 455. As this court in *Briggs v. Peebles* stated:

> Where a person makes a will the general presumption prevails that the testator intended to dispose of all of his property, and there is no presumption that the testator intended to die intestate as to part of his estate if the words used in the will may carry the whole of his property. 144 Tex. 47, 188 S.W.2d 147, 150 (1945).

▮▮▮▮ In this case, the residuary clause in paragraph 12 specifically included lapsed special bequests. In paragraph 17, the testatrix specified that her "entire residuary estate" vest in fee simple in the Masonic Homes for Crippled Children. In the absence of qualifying words used by the testatrix, the use of the terms "rest and residue" of the estate will be presumed to have been used in the normal and usual sense. *Sinnot v. Gidney*, 159 Tex. 366, 322 S.W.2d 507, 511 (1959); *Williams v. Smith*, 146 Tex. 269, 206 S.W.2d 208, 213–15 (1947). The residuary is what is left after all debts and legal charges have been paid and other testamentary gifts have been satisfied.

▮▮▮▮ It is well settled that lapsed bequests pass into the residuary absent a contrary intent expressed clearly in the will. *Kuehn v. Bremer, supra; Lightfoot v. Poindexter*, 199 S.W. 1152, 1159, 1160 (Tex.Civ. App.—Austin 1917, writ ref'd); *Petsch v. Slator*, 573 S.W.2d 849, 852 (Tex.Civ.App.— Austin 1978, writ ref'd n. r. e.); *Cole v. Harris, supra.* It is only in exceptional cases, i. e., when the testator's intent that the subject property not pass under the residuary clause appears in the provisions of the will, that courts have upheld a partial intestacy. *See Bittner v. Bittner*, 45 S.W.2d 148 (Tex.Com.App.1932); *Neinast v. Brauckmuller*, 401 S.W.2d 113, 116 (Tex.Civ.App.— Houston [1st Dist.] 1966, no writ). We hold that the same rules of construction applica-

ble to lapsed bequests and devises apply to adeemed bequests and devises. To the extent that *Lenz v. Sens*, 66 S.W. 110 (Tex. Civ.App.1901, writ ref'd) is in conflict, it is overruled.

Our holding is supported by decisions from other jurisdictions. The case of *In Re Bernier's Will*, 15 Misc.2d 156, 181 N.Y.S.2d 385 (N.Y.Surr.1958) involved facts similar to ours. In following the "identity rule" of the doctrine of ademption, the court held that when a specific devise of realty was adeemed because of its sale by the testatrix prior to her death, the beneficiaries of the realty under the will were not entitled to the proceeds of the purchase money mortgage; rather, the proceeds passed under the residuary clause of the will. The same result was reached in *Worthen Bank & Trust Co. v. Green*, 237 Ark. 785, 376 S.W.2d 275 (1964) and *Lewis v. Thompson*, 52 N.E.2d 331 (Ohio 1943).

▮▮▮▮ We hold that when the bequest or devise is adeemed, absent a contrary intention expressed in the language of the will itself, the subject property passes under the residuary clause instead of by partial intestacy. Since the testatrix here expressed no contrary intention in her will, title to the $80,000 note passes under the residuary clause of her will.

The judgment of the court of civil appeals is reversed, and the judgment of the trial court is affirmed.

BARROW, J., not sitting.