**AFFIRMED and Opinion Filed February 14, 1995.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-94-00784-CV

## BILL STEGER AND JOHN STEGER, Appellants

### V.

## BETTY WILKINS AND L. DURELL HUGHES, Appellees

On Appeal from the Probate Court No. 1
Dallas County, Texas
Trial Court Cause No. 93-1881-P(A)

# OPINION

Before Justices Lagarde, Whittington, and Stewart[1]
Opinion By Justice Whittington

In this will-construction case, Bill and John Steger appeal the trial court's grant of summary judgment in favor of Betty Wilkins and L. Durell Hughes, independent co-executors of Martha Lou Hughes's estate ("appellees"). At trial, the Stegers sought a declaratory judgment that they were the owners of working interests on acreage in four tracts of land owned by Martha Lou Hughes at her death. The Stegers claimed a right to

---

[1] The Honorable Annette Stewart, Justice, Court of Appeals, Fifth District of Texas at Dallas, Retired, sitting by assignment.

the working interests based on language in Martha Lou Hughes's will. The trial court disagreed and granted summary judgment in favor of appellees, declaring that the Stegers had no right to the working interests. In one point of error, the Stegers challenge this ruling. For the reasons set forth below, we affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Carrie T. Maddox owned four tracts of land in Montague County, Texas. Prior to her death, Carrie executed various oil and gas leases covering acreage included in the four tracts in favor of her son-in-law, Dan Hughes, as lessee. Carrie later died and, in her will, bequeathed various interests relating to the four tracts of land to her daughter, Martha Lou Hughes (Dan's wife). In particular, Carrie's will gave Martha Lou (1) the fee simple rights to the surface estates on all four tracts of land; (2) a one-tenth share of all bonuses payable out of production and a one-tenth share of all royalties on oil, gas, and minerals that may be produced on the tracts; (3) the exclusive right to execute oil, gas, and mineral leases on the property; (4) all bonus monies received for the execution of oil, gas, and mineral leases on the property (as distinguished from bonuses payable out of production); and (5) all delay rentals which might be payable under any oil, gas, and mineral leases.[2]

---

[2] The bequest from Carrie to Martha Lou stated, in pertinent part:

> I devise to my beloved daughter Martha Lou Hughes in fee simple all of my undivided interest in the *surface rights* in and to the following described lands, to wit:
> [property descriptions for four tracts of land]

> I do hereby devise all *bonuses payable out of production* and all of the *royalty on oil, gas, and other minerals* in and under and which may be produced from the lands described [above] which I may own at the time of my death to my beloved children, Emily E. Womble, one share; James D. Maddox, one share; Arthur Croxton Maddox, one share; Boyd C. Maddox, one share; Tillman H. Maddox, one share; Marjorie M. Steger, one
>                                                                                                    (continued...)

-2-

Following Carrie's death, Martha Lou executed two oil and gas leases in favor of her husband, Dan Hughes, covering acreage not previously leased out of the four tracts. Thereafter, Dan Hughes completed wells on the property. It is undisputed that these wells have produced oil and gas in paying quantities since their inception. When Dan Hughes died, he devised his working interests in the oil and gas leases to Martha Lou. Thus, after her husband's death, Martha Lou also owned the working interest[3] granted by the oil and gas leases covering the acreage in the four tracts of land.

When Martha Lou died, she left certain oil, gas, and mineral interests to her two nephews, Bill and John Steger. Specifically, Martha Lou's will made the following devise:

> I GIVE and DEVISE to my two nephews, BILL STEGER, presently of Houston, Texas, and JOHN STEGER, presently of Oklahoma City, Oklahoma, all of the oil, gas, and mineral interests of whatever nature *that I inherited from my deceased mother Carrie T. Maddox.* (Emphasis added.)

Based on the language of Martha Lou's will, the Stegers claimed a right to all of the working interests on the four tracts of land covered by Carrie's original will. They sent a

---

[2](...continued)
share; *Martha Lou Hughes, one share*; and to my beloved grandchildren James Coe Maddox, John Clyde Maddox, and Maxine Bullock together one share. I do devise to the said *Martha Lou Hughes* and her successors in title in fee simple *the exclusive right and power to execute oil, gas, and mineral leases* on my undivided interest in the lands described [above] without the consent and without the joinder of any other person . . . . And I also devise to the said Martha Lou Hughes *all bonus monies* (as distinguished from bonuses payable out of production) *which she may receive for the execution of oil, gas, and mineral leases* . . . on the lands described [above] and all *delay rentals which may be paid under any such leases or any leases which may be in existence at the time of my death* . . . . (Emphasis added.)

[3] A "working interest" is the interest owned by the lessee of an oil and gas lease. BLACK'S LAW DICTIONARY 1605 (6th ed. 1990). The interest is referred to as a "working interest" because it grants the lessee the right to *work* on the leased property to search for, develop, and produce oil and gas on the property. *See id.*

demand letter to appellees, the co-executors of Martha Lou's estate, asserting a right to the working interests. Appellees disputed the Stegers's claim to the working interests and filed this declaratory judgment action to obtain a court-ordered interpretation of Martha Lou's will. The Stegers filed a counterclaim, seeking a declaration that they owned the entire mineral estate (including the working interests) covering the four tracts of land referenced in Carrie's will.

Appellees filed a motion for summary judgment, contending the Stegers were not entitled to the working interests on the subject property because Martha Lou had not inherited those interests from her mother, Carrie Maddox. Appellees maintained that any interest Martha Lou had in the working interests was a result of (1) the community property laws (which gave her a community property interest in the leases Carrie executed in favor of Dan), and (2) Dan's will (which devised his working interest in the property to Martha Lou). Because Martha Lou's working interest in the property came exclusively from these two sources rather than from Carrie's will, appellees argued the Stegers had no claim to the working interests under the express language of Martha Lou's will (which devised only the "oil, gas, and mineral interests" Martha Lou obtained from Carrie's will). Appellees sought a declaration that the Stegers had no ownership interest or claim of right to the working interests in the properties. The Stegers filed a cross-motion for summary judgment seeking the opposite declaration.

After considering the summary judgment evidence and arguments of counsel, the trial court granted appellees' summary judgment motion and denied the Stegers's cross-motion.

The court's order provided, in pertinent part, that:

> IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that [appellees'] Motion for Summary Judgment is hereby granted, and that the Court hereby declares that under the Will of Martha Lou Hughes, Deceased, Defendants John Steger and Bill Steger have never had a claim of right, title or interest in and to the working interest in the oil and gas leasehold estates covering the four tracts in Montague County, Texas . . . .

The trial court permanently enjoined the Stegers from interfering in any way with the operation of the leases on the four tracts of land. After the trial court severed the claims covered by the summary judgment from appellees' remaining claims, the Stegers brought this appeal.

## STANDARD OF REVIEW

The standard for reviewing a summary judgment is well established:

1.   The movant for summary judgment has the burden of showing there is no genuine issue of material fact and it is entitled to judgment as a matter of law.

2.   In deciding whether there is a disputed material fact issue precluding summary judgment, we take the evidence favorable to the nonmovant as true.

3.   We indulge every reasonable inference in favor of the nonmovant and resolve any doubts in its favor.

See Nixon v. Mr. Property Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985).

To prevail on summary judgment, a plaintiff must conclusively establish all elements of its cause of action as a matter of law. Swilley v. Hughes, 488 S.W.2d 64, 67 (Tex. 1972); Tex. R. Civ. P. 166a(c). A matter is conclusively established if ordinary minds could

-5-

not differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex. 1982).

The purpose of the summary judgment rule is not to provide a trial by deposition or affidavit. Rather, the purpose of the rule is to provide a method of summarily ending a case that involves only a question of law or no genuine issue of fact. *Gaines v. Hamman*, 163 Tex. 618, 358 S.W.2d 557, 563 (1962); *Port Distrib. Corp. v. Fritz Chem. Co.*, 775 S.W.2d 669, 670 (Tex. App.--Dallas 1989, writ dism'd by agr.). The rule is not intended to deprive litigants of their right to a full hearing on the merits of any real fact issue. *See Gulbenkian v. Penn*, 151 Tex. 412, 252 S.W.2d 929, 931 (1952).

## RIGHT TO WORKING INTEREST

Under Martha Lou's will, the Stegers inherited all the oil, gas, and mineral interests that Martha Lou inherited from her mother, Carrie Maddox. In their sole point of error, the Stegers contend the trial court erred in granting summary judgment in favor of appellees and concluding the Stegers had no right to the working interests on the four tracts of land referenced in Carrie's will. The Stegers contend that the language of Carrie's will, when read in its entirety, clearly devised the full mineral estate on each tract of land to Martha Lou and that they were therefore entitled, under the express language of Martha Lou's will, to the full mineral estate, including the working interest, on each tract. Appellees counter that Martha Lou did *not* in fact receive the full mineral estate on each of the four tracts under Carrie's will, but instead received only certain rights with respect to the oil, gas, and minerals under the property. Appellees maintain that because Martha Lou did not obtain

the working interest on the leases through Carrie's will, the Stegers were not entitled to those interests under the language of Martha Lou's will. We agree with appellees and accordingly affirm the trial court's order.

Determining testamentary intent is the critical inquiry in a will-construction case. *Henderson v. Parker*, 728 S.W.2d 768, 770 (Tex. 1987). All rules of construction must yield to the basic intention and purpose of the testatrix as reflected in the instrument. *Shriner's Hosp. for Crippled Children v. Stahl*, 610 S.W.2d 147, 151 (Tex. 1980). In determining testamentary intent, we look first to the language used by the testatrix in the four corners of the instrument. *Henderson*, 728 S.W.2d at 770; *Stahl*, 610 S.W.2d at 151. In the absence of ambiguity, we will construe a will based on the express language used therein. *Henderson*, 728 S.W.2d at 770. The question is not what the testatrix intended to write, but the meaning of the words she actually used. *Stahl*, 610 S.W.2d at 151. Although wills are to be accorded a liberal construction, *see Roberts v. Drake*, 380 S.W.2d 657, 660 (Tex. Civ. App.--Dallas 1964, writ ref'd n.r.e.), we may not redraft a will or vary or add provisions to a will under the guise of "will construction" in order to reflect some presumed intention of the testatrix. *Stahl*, 610 S.W.2d at 151.

During oral argument, the Stegers conceded that any claim they may have to the working interests is contingent on a bequest by Carrie to Martha Lou of the full *mineral estate* under the terms of Carrie's will. The Stegers concede that if Martha Lou did not in fact receive the full mineral estate, then they were not entitled to the working interests on the four tracts of land. Thus, the paramount issue that we must resolve in this appeal

-7-

is whether Martha Lou in fact inherited a full mineral estate under her mother's will. We conclude, based on the unambiguous language of Carrie's will, that she did not.

Under Carrie's will, Martha Lou received the following rights with respect to the minerals under the four tracts of land: (1) a one-tenth share of bonuses and royalties payable out of production, (2) the right to execute leases on the property, (3) bonuses payable for the execution of any leases on the property, and (4) any delay rentals payable under the leases. Although the Stegers contend, based on the language granting these various rights, that Martha Lou inherited the full mineral estate from her mother, we do not agree.

In *Altman v. Blake*, 712 S.W.2d 117, 118 (Tex. 1986), the Texas Supreme Court recognized that a severed mineral estate has five essential attributes. Those attributes include: (1) the right to develop (*i.e.*, the right of ingress and egress); (2) the right to lease; (3) the right to receive bonus payments; (4) the right to receive delay rentals; and (5) the right to receive royalty payments. *Altman*, 712 S.W.2d at 118. Although Carrie's will does devise the last four of these attributes to Martha Lou, it does not address or contemplate devising the right to develop minerals on the subject land. This is an essential attribute of a mineral estate since it allows the owner of the estate to enter land and extract his "property" from underneath the land. *See Luckel v. White*, 819 S.W.2d 459, 463 (Tex. 1991) (describing "right to develop" as right to develop *and* produce minerals).

Although the Stegers contend Martha Lou did in fact inherit the right of ingress and egress on the property (and thus the right to develop the minerals under the property)

-8-

because she inherited the *surface rights* to the property from her mother, we do not agree. The right to develop contemplated in *Altman* is the right to enter onto land and develop the minerals *underneath* the land. Owning the surface estate to a specified piece of property, however, does not give the owner of that estate the right to develop the minerals under the land; it only gives the owner the right to enter the land and use the surface, be it for farming, grazing cattle, or otherwise. *See Phillips Petroleum Co. v. Cowden*, 241 F.2d 586, 590 (5th Cir. 1957) (noting that right to explore for minerals is ordinarily attribute of mineral ownership rather than ownership of surface estate). Because a grant of the surface estate does not give the surface estate owner the right to develop contemplated in *Altman*, we conclude Martha Lou did not inherit the right to develop from her mother. Because the right to develop is an essential attribute of a mineral estate and this right is conspicuously absent from the terms of Carrie's will, we further conclude Carrie did not intend to devise a full mineral estate to Martha Lou.

As noted previously, testamentary intent is the critical inquiry in a will-construction case. Because we conclude it was *not* Carrie's intent to devise the full mineral estate to Martha Lou, we conclude Martha Lou did not inherit the working interests on the subject property through her mother's will.[4] Thus, we conclude the Stegers were not entitled to the working interests on the four tracts of land.

---

[4] The conveyance of certain specified rights with respect to minerals does not necessarily strip the mineral estate owner of his right to the mineral estate. *See Buffalo Ranch Co., Ltd. v. Thomason*, 727 S.W.2d 331, 334 (Tex. App.--Houston [1st Dist.] 1987, writ ref'd n.r.e.) (owner of mineral interest may convey various interests relating to the minerals without losing his claim to mineral interest); *Diamond Shamrock Corp. v. Cone*, 673 S.W.2d 310, 313-14 (Tex. App.--Amarillo 1984, writ ref'd n.r.e.) (same).

We find this conclusion to be supported by other portions of Carrie's will; specifically, her devise of the surface rights in the property to Martha Lou. In her will, Carrie devised to Martha Lou "in fee simple all of [her] undivided interest in the surface right in and to [the subject properties]." This clear grant of the surface rights indicates Carrie knew how to convey an entire estate in land when that was her intent. The fact that she did not use this same language when addressing the minerals under the land, but instead opted for a more narrow devise of particular rights, indicates that Carrie did not in fact intend to convey the entire mineral estate to Martha Lou. Indeed, we consider Carrie's intent under the will to be clear: she intended to divide any bonuses and royalties payable out of production among all her descendants in equal shares, while leaving Martha Lou the right to execute leases on the property and, thus, manage the mineral estate for the benefit of all of Carrie's heirs. In return for undertaking the additional burden of managing the estate, Carrie compensated Martha Lou by giving her all the bonuses and delay rentals that might result from leasing the minerals under the property.

We note additionally that Carrie's will does not contain the usual language used to convey a mineral estate. *See, e.g., Altman*, 712 S.W.2d at 118-19 (grant of "an undivided one-sixteenth (1/16) interest in and to *all of the oil, gas and other minerals in and under and that may be produced*" from the land used to convey one-sixteenth *interest* in the mineral fee); *French v. Chevron USA, Inc.*, 871 S.W.2d 276, 277-78 (Tex. App.--El Paso 1994, writ granted) (grant of interest "in and to *all of the oil, gas and other minerals, in, under and that may be produced from*" the land conveyed mineral estate);

-10-

*Prairie Producing Co. v. Schlachter*, 786 S.W.2d 409, 412 (Tex. App.--Texarkana 1990, writ denied) (same); *see also* 1 ERNEST E. SMITH & JACQUELINE L. WEAVER, TEXAS LAW OF OIL AND GAS, ch. 3.5 (1994) (noting that traditional language used to create mineral fee is reference to "oil, gas, and other minerals in, on, and under the described land"). The language Carrie chose to employ conveying only limited rights with respect to the minerals under the four tracts of land, rather than the typical language used to convey a mineral estate, is further indication of her intent to bequeath less than the entire mineral estate to Martha Lou.[5]

We hold the trial judge did not err in concluding the Stegers had no claim to the working interests on the four tracts and in granting appellees' motion for summary judgment. We overrule the Stegers's sole point of error.

We affirm the trial court's judgment.

MARK WHITTINGTON
JUSTICE

Do Not Publish
TEX. R. APP. P. 90
940784F.U05

---

[5] We note additionally that the language reserving a royalty interest in favor of Martha Lou and Carrie's other heirs would have been unnecessary had Carrie intended to devise a full mineral estate to Martha Lou. If this had been her intent, she could simply have conveyed the mineral estate to Martha Lou and reserved a portion of the royalties and bonuses payable out of production in favor of her other descendants.

-11-