NO. 07-05-0299-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL C



NOVEMBER 22, 2005



______________________________




IN THE INTEREST OF J.T.W., A MINOR CHILD



_________________________________



FROM THE COUNTY COURT AT LAW OF RANDALL COUNTY;


NO. L-3592; HONORABLE JAMES W. ANDERSON, JUDGE



_______________________________



Before QUINN, C.J., and REAVIS and HANCOCK, JJ.

ORDER ON COUNSEL'S MOTION TO WITHDRAW


 Following the trial court's order terminating their parental rights, appellants Nanci
Teresa White and Robert Lloyd White, II perfected this accelerated appeal through
retained counsel, Laura D. Hamilton. Pending before this Court is counsel's motion to
withdraw due to ineffective communication with the Whites. The motion is in compliance
with Rule 6.5 of the Texas Rules of Appellate Procedure. We grant the motion, and
pursuant to Rule 6.5(c), counsel must immediately notify the Whites of any deadlines or
settings not previously disclosed and file a copy of the notice with the court clerk.

 Jana Smith, Official Court Reporter for Randall County Court At Law, notified this
Court on November 15, 2005, that payment had not yet been made for the reporter's
record. The Court sua sponte grants an extension of time in which to file the reporter's
record to Monday, December 12, 2005.

 By letter dated November 14, 2005, Lloyd notified this Court of his and his wife's
intent to proceed pro se and believed they had been doing so since October 6, 2005, when
he wrote this Court and questioned the authority of a court reporter to require payment for
a reporter's record before an appeal could proceed. A pro se litigant is held to the same
standards as licensed attorneys and must comply with applicable laws and rules of
procedure. Holt v. F.F. Enterprises, 990 S.W.2d 756, 759 (Tex.App.-Amarillo 1998, no
pet.). 

 Unless a party is entitled to proceed without payment of fees, the responsible party
must pay for preparation of the reporter's record or make satisfactory arrangements with
the reporter to pay the fee. See Tex. R. App. P. 35.3(b)(3). A party must also request
preparation of the record in writing and designate the exhibits to be included. See Tex. R.
App. P. 34.6(b)(1). A copy of the request must be filed with the trial court clerk. Id. at (2). 
The Court directs the Whites to certify in writing to this Court on or before Monday,
December 5, 2005, whether they have complied with the Rules. Failure to comply with the
Court's directive may result in the deadline for filing appellant's brief being set with any
points or issues that do not require a reporter's record being considered and decided. See
Tex. R. App. P. 37.3(c). See also Tex. R. App. P. 38.6(a) (requiring a brief in an
accelerated appeal to be filed within 20 days after the later of the clerk's record or
reporter's record being filed).

 Accordingly, Laura D. Hamilton's motion to withdraw is granted. Certification from
the Whites confirming compliance with the Texas Rules of Appellate Procedure is due on
or before Monday, December 5, 2005, and the reporter's record is due on or before
Monday, December 12, 2005.

 It is so ordered.

 Per Curiam 

 



;                                                    Appellant

v.

WILLIAM A . CARTER, EXECUTOR OF THE
ESTATE OF HARRIET CARTER, DECEASED, AND
AS SUCCESSOR TRUSTEE OF THE HARRIET
CARTER TRUST, 

                                                                                      Appellee
_________________________________

FROM THE COUNTY COURT AT LAW NO. 2 OF POTTER COUNTY;

NO. 93,885-2; HON. PAMELA C. SIRMON, PRESIDING
_______________________________

Memorandum Opinion
_______________________________

Before QUINN, C.J., CAMPBELL AND HANCOCK, JJ. 
          Dirk Mathis (Mathis) appeals a declaratory judgment wherein the trial court
determined that the house located at 2217 Peach Tree Street (the residence) was habitable
and that the Harriet Carter Trust had no obligation to complete renovations to the property. 
Mathis claims that the evidence is insufficient to support the findings that the house in
which he was granted the right to live was habitable and that the Harriet Carter Trust was
not required to complete the remodeling which the house was undergoing at the time of
Mrs. Carter’s death. We affirm.
Background
          According to the record, Mathis had lived in the home located at 2217 Peach Tree
in Amarillo, Texas, prior to Harriet Carter’s death. The home was undergoing extensive
renovations which included a new addition at the time Mrs. Carter died and upon leaving
a will she created a trust wherein she granted Mathis a right to “live in” the home.


 Mrs.
Carter also established through the trust “income from the trust assets . . . shall pay taxes
and upkeep of [] the residence at 2217 Peach Tree, Amarillo, Texas, . . . .” At the hearing,
however, William Carter (William), as trustee, did not believe that “upkeep” included the
completion of the additions. Mathis thought differently.


 The trial court eventually sided
with William and found that Mathis could live in the house without William completing the
additions.
Standard of Review
          When interpreting a will or trust, the rules of construction are well settled. Hurley v.
Moody Nat'l Bank of Galveston, 98 S.W.3d 307, 310 (Tex. App.–Houston [1st Dist.] 2003,
no pet.). First, their construction is a question of law susceptible to de novo review. Id.
(citing Nowlin v. Frost Nat'l Bank, 908 S.W.2d 283, 286 (Tex. App.–Houston [1st Dist.]
1995, no writ)). Second, we construe both wills and trusts to ascertain the intent of the
maker. Id., citing Jewett v. Capital Nat'l Bank, 618 S.W.2d 109, 112 (Tex. Civ. App.–Waco
1981, writ ref'd n.r.e.). Third, the intent of the maker must be ascertained from the
language used in the four corners of the instrument. See Shriner's Hosp. for Crippled
Children of Tex. v. Stahl, 610 S.W.2d 147, 151 (Tex.1980) (applying this concept to
construe a will). Fourth, the terms used must be harmonized to properly give effect to all
parts of the instrument. Hutton v. Methodist Home, 615 S.W.2d 289, 292 (Tex. Civ.
App.–Fort Worth 1981, writ ref'd n.r.e.). That is, the court should construe the instrument
to give effect to all provisions so that no provision is rendered meaningless. Myrick v.
Moody, 802 S.W.2d 735, 738 (Tex. App.–Houston [14th Dist.] 1990, writ denied). Fifth, if
the court can give a "certain or definite legal meaning or interpretation" to the words of an
instrument, the instrument is unambiguous. Coker v. Coker, 650 S.W.2d 391, 393 (Tex.
1983). Alternatively, if the meaning of the instrument is uncertain or "reasonably
susceptible to more than one meaning," the instrument is ambiguous. Id.  
                                                         Analysis 
          As shown in the record, the house was undergoing renovations. That is, rooms were
being added to the existing home when Mrs. Carter died. Furthermore, in that portion of
the home undergoing construction, there were exposed electrical wires and pipes, missing
toilets and sinks, scattered construction materials, disconnected appliances, missing walls,
and an opening in the wall between the completed home and the addition. However, other
evidence illustrated that Mrs. Carter was living in the completed portion of what we call the
original home, that the addition of a door in the opening between the original home and
additions would seal out the dust and debris emanating from the portion undergoing
construction, and that the original home was in itself a house with functioning bedrooms,
baths, kitchen, living room, utilities, running water, and sanitary facilities. Again, Mrs.
Carter was living in it immediately before her death. Moreover, nothing of record suggests
that the original home was either unsanitary or unsound. 
          Next, Mathis was given the “right to live in the house” as long as he lived. 
Furthermore, trust assets (save for some unrelated to the controversy before us) were to
be used to pay for “taxes and upkeep.” Yet, the trust instrument did not define the terms
“live” and “upkeep.” Nonetheless, we can see some interrelationship between the words. 
For instance, it seems rather logical that before one can “live” in a house, it must be
habitable. Indeed, the plain meaning of the phrase “live in” encompasses the idea of
inhabiting a place. See Merriam-Webster’s Collegiate Dictionary 601 (10th ed. 1995)
(defining inhabit). Furthermore, to be habitable, an abode must be safe, sanitary and
otherwise fit for humans to inhabit. Kamarath v. Bennett, 568 S.W.2d 658, 660-61
(Tex.1978) (talking about the warranty of habitability). As for the word “upkeep,” it
connotes the idea of “maintaining” something (as opposed to creating it). See Merriam-Webster’s Collegiate Dictionary 1375 (11th ed. 2003) (defining upkeep). Given this,
then the individual responsible for “upkeep” of the home, i.e. William, would be obligated
to undertake those measures needed to maintain the residence in a safe and sanitary
condition fit for human habitation. And, that Mrs. Carter (a frail, wealthy, elderly woman)
lived in the original home while rooms were being added to it is somewhat telling. That is
some evidence that the abode was capable of being inhabited in a safe and sanitary
manner at the time of her death. This seems especially so since the original home could
be separated from the purported dangers of the bare wiring, missing toilets, and debris
present in the area undergoing development through the construction of a door. Nor can
we forget that while the addition may not be completed, the original home nonetheless had
running water and utilities, heat and air conditioning, a functioning sewer system,
bedrooms, living areas and a kitchen. So too was it furnished in many respects.
          Of similar import is the fact that Mathis was not granted a fee interest in the house
via the trust instrument. Rather, he simply had a “license” to use it when he was in
Amarillo, or so the trial court found.


 In other words, it was not his home but rather a place
where he could stay when in town. That express provision was not made in the trust
instrument or its amendments for completing the construction is also of import since the
amendment granting Mathis the right to live in the house was executed weeks before her
death, while the construction was ongoing, and though she knew she had terminal cancer.
          So, under the circumstances before us, we cannot say that the trial court erred in
relieving William of any obligation to complete the room additions as a part of his duty to
maintain the house so that Mathis could inhabit it. In so concluding, though, we express
no opinion on what measures, if any, the trustee must undertake to prevent the
uncompleted construction from inhibiting Mathis’ use of the existing home. That is left for
another day.
          Accordingly, the trial court’s judgment is affirmed.
 
                                                                           Brian Quinn
                                                                          Chief Justice