

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-17-00296-CV
_____

GARRY JACK SULLIVAN, AS INDEPENDENT EXECUTOR OF
THE ESTATE OF JUANITA GIBSON, APPELLANT

V.

SHERRY LAYNE HATCHETT, APPELLEE

On Appeal from the 287th District Court
Bailey County, Texas
Trial Court No. 9650, Honorable Gordon Houston Green, Presiding

February 11, 2019

## DISSENTING OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

For the reasons the court gives, I agree with the court's disposition of appellant Garry Jack Sullivan's second issue contending that the claim asserted by appellees Sherry Lane Hatchett, *et al*. was barred by limitations. However, I would overrule Sullivan's first issue and would affirm the trial court's judgment. For that reason, I dissent from the court's judgment.

The will of Charles Henry Gibson that the trial court construed appears as a formally-prepared will. It consists of nine typewritten pages, plus attestation and self-proving language, and was signed before three witnesses. Some six pages of the nine are occupied with provisions governing the trust created for the benefit of two granddaughters of Charles and his wife Juanita Gibson. The will recites that the Gibsons' son Jerry Gibson died the month before Charles signed the will. The will states Charles's intention to dispose of his separate property and his share only of his community estate with Juanita. It named Juanita as independent executrix and their daughter Sherry as alternate independent executrix. It named Sherry as trustee of the trust for her daughters. The court has quoted the will's dispositive provisions, and I will not repeat them here.

Addressing the parties' motions for summary judgment, the trial court held that Charles's will gave to his wife a life estate in the assets of his estate, and gave the remainder to be distributed fifty percent to their daughter Sherry, ten percent to First Baptist Church, Lubbock, and forty percent in trust for the benefit of Christina Michelle Hatchett and Lisa Marie Hatchett Scott. The parties agree that the will's Second paragraph gave Juanita a life estate in all the assets of her husband's estate; they agree also that on Juanita's death forty percent of the remainder passed in trust for their granddaughters Christina and Lisa, under the residuary language of the Fourth paragraph. The disagreement comes over the will's disposition of the sixty percent of Charles's estate referred to in the will's Third paragraph. To reach its conclusion that the disputed sixty percent passed to Sherry and First Baptist Church, Lubbock, the trial court necessarily determined they were included within the phrase "the remaindermen

2

hereinafter named" that appears in the Second paragraph. In my opinion, the will as a whole supports that view of Charles's testamentary intent.

That Charles referred to "remaindermen hereinafter named" in the paragraph giving his wife a life estate demonstrates his intent to name remaindermen in his will. *See, e.g., Dudley v. Jake & Nina Kamin Found.*, No. 01-12-00579-CV, 2014 Tex. App. LEXIS 899 (Tex. App.—Houston [1st Dist.] Jan. 28, 2014, no pet.) (mem. op.) (court presumes testator "placed nothing superfluous or meaningless in his will and that every word plays a part in the disposition of his property") (citations omitted). Aside from his wife, the dispositive provisions of Charles's will name only four beneficiaries, his daughter Sherry, First Baptist Church, Lubbock, and his two granddaughters Christina and Lisa. The will designates percentages to be received by each, and the percentages total 100%. The "overall structure," *see Hysaw v. Dawkins*, 483 S.W.3d 1, 15 (Tex. 2016), of the will's dispositive provisions thus supports a conclusion that the "hereinafter named" remaindermen are the same beneficiaries named in the will.[1]

Sullivan argues there is a conflict between such a reading of the will and the terms of its Third paragraph, by which the bequest to Sherry and the church of the disputed sixty percent is made contingent on the occurrence of one of three events: Juanita's death before Charles's; their deaths in the same accident or disaster; or Juanita's failure

---

[1] The will includes also references to family members not included in the dispositions. The Fourth paragraph, which we have quoted above, benefits only two of Charles and Juanita's three grandchildren. In the later paragraph reciting that their son Jerry had died the month before Charles executed his will, the will states their son "did leave issue," but that Charles "intentionally made no provision for such issue, intentionally leaving his issue out of this will, without bequest or devise."

3

to survive him by ninety days or, if earlier, until his will was probated. It is undisputed none of those three contingencies occurred. Consequently, Sullivan concludes, the Third paragraph's bequests are rendered "moot."[2] But Sullivan sees a conflict where none exists. There is nothing inconsistent between the Third paragraph's provisions naming Sherry and the church as recipients of the sixty percent under the stated contingencies and the Second paragraph's identification of them as remaindermen after the life estate given Juanita. The two paragraphs do not provide conflicting dispositions; they provide alternative dispositions. If any of the eventualities described in the Third paragraph occurred, no life estate would be created in Juanita. Read together, the Second and Third paragraphs thus consistently provide for Sherry and the church to receive the disputed sixty percent after Charles and Juanita both were deceased, regardless of the order or timing of their deaths, subject only to Juanita's life estate.

To be sure, Charles's will could have been more explicit in its naming of remaindermen to follow Juanita's life estate. But I see no apparent conflicts or inconsistencies in the language of the will's paragraphs Second and Third, and even if there were, the court's task is to harmonize them if that is possible under the language of the will as a whole. *Hysaw*, 483 S.W.3d at 4 (court determines intent "by construing the instrument holistically and by harmonizing any apparent conflicts or inconsistencies in the language"); *see Shriner's Hosp. for Crippled Children of Tex. v. Stahl*, 610 S.W.2d 147, 151 (Tex. 1980) ("[a]ll rules of construction must yield to the basic intention and purpose of the testator as reflected by the entire instrument"); *In re Estate of Catlin*, 311 S.W.3d

---

[2] As the court made clear in *Hysaw*, 483 S.W.3d at 15, however, the conditional nature of a testamentary provision does not negate its value as indicating the testator's intent.

4

697, 701 (Tex. App.—Amarillo 2010, pet. denied) (court's task construing will "is to harmonize potentially conflicting terms in a way that effectuates all aspects of the document"). The trial court's construction of the will does so. Sullivan attempts no reconciliation of the conflict he sees between the language of the Second and Third paragraphs. He gives no effect to Charles's words in the Second paragraph referring to the "remaindermen hereinafter named . . . ." The court concludes that, despite the wording, the will does not name remaindermen. But, construing the will, we focus not on what the testator intended to write, but on the meaning of the words actually used. *San Antonio Area Found. v. Lang*, 35 S.W.3d 636, 639 (Tex. 2000) (quoting *Shriner's Hosp.*, 610 S.W.2d at 151). Charles said the remaindermen were "hereinafter named." I can see no justification for a conclusion he did not mean what he said.

In addition to the failure of Sullivan's reading to harmonize all the will's provisions, *In re Estate of Catlin*, 311 S.W.3d at 701, other reasons favor the trial court's construction. Sullivan acknowledged his reading contravenes our law's presumption disfavoring partial intestacy. As the court said in *Shriner's Hosp.*, "[t]he mere making of a will is evidence that the testator had no intent to die intestate and creates a presumption that the testator intended to dispose of his entire estate, and that did not intend to die intestate as to the whole or any part of his property." 610 S.W.2d at 151 (citations omitted). The court there continued, quoting an earlier decision, "[w]here a person makes a will the general presumption prevails that the testator intended to dispose of all of his property, and there is no presumption that the testator intended to die intestate as to part of his estate if the words used in the will may carry the whole of his property." *Id.* at 152 (quoting *Briggs v. Peebles*, 144 Tex. 47, 188 S.W.2d 147, 150 (1945)). Charles's will reflects a straight-

forward and simple estate plan, and the words he used readily carry the whole of his property, including the remainder interest following his wife's life estate. No resort to partial intestacy is necessary to carry out his expressed testamentary intent. *See Shriner's Hosp.*, 610 S.W.2d at 151 (when will is open to two constructions, interpretation will be given it which prevents intestacy).

Sullivan asserts the trial court was "not at liberty to rewrite the will" to avoid a partial intestacy. The trial court did not rewrite the will but properly ascertained Charles's testamentary intent from the words used within the document's four corners. *Hysaw*, 483 S.W.3d at 4. Believing the trial court got it right, I respectfully dissent from the court's contrary conclusion.

James T. Campbell
Justice