**Opinion issued August 13, 2019**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-00550-CV

———————————

**LARRY BREWER, Appellant**

**V.**

**DEBRA MOORE FOUNTAIN, PETA FOUNDATION, AND PAWS SHELTER OF CENTRAL TEXAS, Appellees**

---

**On Appeal from the County Court at Law No. 2**
**Hays County, Texas**
**Trial Court Case No. 16-0071-P-B**

---

## O P I N I O N

This case involves the construction of the last will and testament and first codicil of Ralph O. Shepley, Jr.[1] At issue is the precise nature of Larry Brewer and

---

[1]   The Texas Supreme Court transferred this appeal from the Court of Appeals for the Third District of Texas. *See* TEX. GOV'T CODE § 73.001 (authorizing transfer of cases between courts of appeals).

Linda Brewer's right of first refusal for certain real property.[2] We reverse and remand the case to the trial court for further proceedings.

## Factual and Procedural History

**A.      Background**

Ralph O. Shepley, Jr. executed his will in 2012 and his first codicil to the will in 2014. Shepley also executed a second codicil, but it is not at issue in this appeal. Shepley died in 2016. The beneficiary of the will was his daughter, Debra Moore Fountain. Following Shepley's death, Fountain filed an application in the trial court to have the will and two codicils admitted to probate and to be named administrator of his estate. The trial court appointed Fountain as the sole administrator of Shepley's estate and granted issuance of letters of administration.

Paws Shelter of Central Texas ("PAWS") and People for the Ethical Treatment of Animals ("PETA") intervened in the probate proceeding. Each nonprofit charitable organization asserted an interest as charitable beneficiaries. Larry Brewer also intervened as another beneficiary of the estate and the trustee of the Ralph O. Shepley Pet Trust.[3]

---

[2]      Linda Brewer is not a party to this case.

[3]      In the first codicil, Shepley appointed Mr. Brewer as the trustee of the pet trust to facilitate Mr. Brewer's care of Shepley's pets after Shepley's death.

**B.      The Real Property at Issue**

This dispute centers on real property. Shepley owned a 191.48-acre ranch that contains a residence in the northern part of the property that sits on a small lake. The access road to the residence is long, and most of the property is accessible only by an interior road over the dam that creates the lake.

In the first codicil, Shepley devised the ranch under these terms:

> I direct that my real property, consisting of 191.48 +/- acres together with all improvements thereon (the "Real Property") be sold by [Fountain] and the proceeds divided into three equal shares and distributed to the following individuals and entities    under the following conditions and terms:
>
> 1. A one-third (1/3) share to DEBRA MOORE FOUNTAIN; provided, however, if DEBRA MOORE FOUNTAIN fails to survive me, then I leave this one-third (1/3) share to the descendants of DEBRA MOORE FOUNTAIN who survive me, per stirpes.
>
> 2. A one-third (1/3) share to PAWS . . . ; provided that if PAWS is not in existence at the time of my death, then I direct that [Fountain] select an organization with the same vision and mission to receive this gift.
>
> 3. A one-third (1/3) share to . . . PETA; provided that if PETA is not in existence at the time of my death, then I direct that [Fountain] select an organization with the same vision and mission to receive this gift.
>
> PROVIDED, HOWEVER, the sale of the Real Property is to be handled pursuant to the following guidelines: I direct that [Fountain] shall obtain an MAI[4] appraisal on the Real Property from a state

---

[4]      The term "MAI" refers to a Membership of the Appraisal Institute held by licensed professionals who provide services regarding real property, including opinions of value. *See Gregg County Appraisal Dist. v. Laidlaw Waste Sys., Inc.*,

certified general real estate appraiser qualified to perform rural ranch property appraisals. The appraiser shall determine the value as of the date of my death and this value shall be used in any Inventory filed in connection with the probate of my estate.

PROVIDED FURTHER, Larry Brewer and Linda Brewer or the survivor thereof, shall have the first right to purchase any or all of the Real Property from the Estate at a sales price equal to the Appraised value of the Real Property as determined above. I suggest that this right of first refusal shall last for a period of six (6) months from the date of the appraisal.

Thus, Shepley devised an option to purchase any or all of the ranch to the Brewers and an undivided one-third interest in the sale proceeds of the property to Fountain, PAWS, and PETA.

## C.    The Genesis of the Dispute

In 2017, Fountain filed an application to retain Vance E. Powell, III, MAI, as a proposed appraiser of the property. The trial court then approved him as the appraiser pursuant to the instructions in the first codicil. Powell appraised the property as of the date of Shepley's death. After initially valuing the property at $4,560,000, Powell lowered the market value to $4,400,000.[5] After obtaining this

---

907 S.W.2d 12, 18 n.2 (Tex. App.—Tyler 1995, writ denied); *Olson v. Harris County*, 807 S.W.2d 594, 595 n.2 (Tex. App.—Houston [1st Dist.] 1990, writ denied).

[5]  According to the appraisal, the value of the total property estate is $4,400,000, which consists of the homestead estate (4.83 acres) valued at $473,000 and the vacant ranch (186.65 acres) valued at $3,960,000. The sum of the values of the homestead estate and the vacant ranch is $4,433,000. The trial court later used $4,433,000 to represent the actual value of the property.

appraisal value, the Brewers timely exercised their option to purchase a portion of the property—namely, 21.3 acres[6]—for $794,849.45 based on the appraised value of the homestead and the value per acre for the vacant ranch. This tract of land is located in the center of the ranch, which includes Shepley's homestead, a majority of the lake, and the access road to the homestead and other portions of the property. The land selected by the Brewers creates an orphan tract of seven acres to the northwest of the lake. The other remainder tract of land—specifically, the bulk of the property that is east of the ravine—is inaccessible by the road access because the Brewers' carve-out includes the entire access road.

Fountain then sought court approval to have Powell re-appraise the property as partitioned tracts–one that the Brewers sought to purchase and one that they declined to purchase. The next day, PAWS and PETA objected, contending that the Brewers' proposed purchase price in the earnest money contract violated the appraisal process set forth in the first codicil because the first codicil did not authorize a per-acre valuation or otherwise include express terms to determine the value of any partitioned area of the property.

---

[6]     According to the proposed earnest money contract, the Brewers exercised their option to purchase "20 acres, more or less" of the property, but the trial court later adjusted the acreage to 21.3 acres based on an estimate of the area of an aerial photograph showing the area the Brewers had opted to buy.

In early 2018, following a hearing on Fountain's motion, the trial court ordered the appraisal of "the estate's real property according to the tracts resulting from the partition proposed by [the Brewers]." Powell conducted the appraisal of the 21.3 acres and provided a report to the parties. According to Powell's appraisal report, the "Market Value-Recommended Compensation" for the 21.3 acres selected by the Brewers as of Shepley's date of death was $2,869,592. Mr. Brewer objected, and Fountain, PAWS, and PETA filed responses opposing his objection.

The trial court held a hearing on the Brewer's objection. The Brewers asserted that Powell's new appraisal over-valued the tract they sought to purchase. In response, Fountain and the charitable beneficiaries contended that the appraisal accurately reflected the value of the land the Brewers carved from the whole, representing the most valuable portions of the homestead and ranch land.

The trial court ruled that the Brewers had the right to purchase any or all of the land for the full appraised value of $4,433,333. If, however, the Brewers exercised their option to purchase less than the whole, then the trial court would require them to pay $4,433,333 and grant them the right to receive an offset reimbursement[7] of the purchase price up to $3,500,000. Mr. Brewer appealed this

---

[7] Neither Shepley's last will and testament nor first codicil contains an offset provision.

order.[8] In three issues, Brewer contends that the trial court erred as a matter of law by requiring the Brewers to pay the full value of the property after they chose to purchase only a portion of the property, and to the extent the testamentary documents are ambiguous, then remand is appropriate to elicit extrinsic evidence about Shepley's testamentary intent.

## Trial Court's Construction of Unambiguous Will was Error

### A. Standard of review

We review a trial court's construction of unambiguous language in a will de novo. *Jinkins v. Jinkins*, 522 S.W.3d 771, 779 (Tex. App.—Houston [1st Dist.] 2017, no pet.). When interpreting a will, courts focus on the testator's intent as

---

[8] Generally, outside a few, mostly statutory exceptions, a party may appeal only from a final judgment. *Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001). In probate proceedings, a final order or judgment is not required when the order or judgment "actually disposes of every pending claim and party or unless it clearly and unequivocally states that it finally disposes of all claims and all parties." *Id.* at 205. This exception applies in probate proceedings when "the order must be one that finally disposes of and is conclusive of the issue or controverted question for which that particular part of the proceeding is brought." *Vickery v. Gordon*, No. 14-11-00812-CV, 2012 WL 3089409, at *3 (Tex. App.—Houston [14th Dist.] July 31, 2012, no pet.). The purpose of this exception is "because controlling, intermediate issues may need appellate review to prevent an error from harming later phases of the proceeding." *De Ayala v. Mackie*, 193 S.W.3d 575, 578 (Tex. 2006); *In re Estate of Adams*, No. 14-12-00064-CV, 2013 WL 84925, at *2 (Tex. App.—Houston [14th Dist.] Jan. 8, 2013, no pet.) (mem. op.) ("A probate proceeding consists of a continuing series of events, in which the probate court may make decisions at various points in the administration of the estate on which later decisions will be based."). Here, the trial court's order states that it is "final and appealable as it conclusively disposes of the issue for which this part of the proceeding was brought." Moreover, this order conclusively addressed the dispute involving the land for which Brewer appeals. We therefore conclude that the trial court's order is final and appealable and that we therefore have jurisdiction over this appeal.

reflected in the instrument as a whole. *San Antonio Area Found. v. Lang*, 35 S.W.3d 636, 639 (Tex. 2000); *see Welch v. Straach*, 531 S.W.2d 319, 322 (Tex. 1975) (concluding that "all parts of the testamentary writings . . . are to be harmonized and given effect"). The court must ascertain the testator's intent from the language expressed within the four corners of the will. *Shriner's Hosp. for Crippled Children of Tex. v. Stahl*, 610 S.W.2d 147, 151 (Tex. 1980); *Rosen v. Wells Fargo Bank Tex., N.A.*, 114 S.W.3d 145, 158 (Tex. App.—Austin 2003, no pet.). Thus, the court must scrutinize the words actually used by the testator instead of the words he may have intended to write. *Hysaw v. Dawkins*, 483 S.W.3d 1, 7 (Tex. 2016). "In this light, courts must not redraft wills to vary or add provisions 'under the guise of construction of the language of the will' to reach a presumed intent." *Lang*, 35 S.W.3d at 639 (quoting *Stahl*, 610 S.W.2d at 151). When a trial court's construction of an unambiguous will is erroneous, an appellate court will reverse the trial court's judgment and render the judgment the trial court should have rendered. *See, e.g.*, *Estate of Neal*, No. 02-16-00381-CV, 2018 WL 283780, at *7 (Tex. App.—Fort Worth Jan. 4, 2018, no pet. h.) (mem. op. on reh'g); *In re Estate of Hernandez*, No. 05-16-01350-CV, 2018 WL 525762, at *4 (Tex. App.—Dallas Jan. 24, 2018, no pet.) (mem. op.); *In re Estate of Slaughter*, 305 S.W.3d 804, 812 (Tex. App.—Texarkana 2010, no pet.).

8

**B.    The first codicil unambiguously authorized partial purchase**

The first codicil provides the Brewers "the first right to purchase any or all of the Real Property from the Estate at a sales price equal to the Appraised value of the Real Property." In other words, the Brewers may purchase the entire 190-plus acres or any part of it. In determining the sale price for the property, the first codicil articulated a formula to ascertain the value of the selected property:

> PROVIDED, HOWEVER, the sale of the Real Property is to be handled pursuant to the following guidelines: I direct that [Fountain] shall obtain an MAI appraisal on the Real Property from a state certified general real estate appraiser qualified to perform rural ranch property appraisals. The appraiser shall determine the value as of the date of my death and this value shall be used in any Inventory filed in connection with the probate of my estate.

We hold that the will and codicil do not conflict and their meaning is clear and unambiguous. *In re Estate of Hunt*, 908 S.W.2d 483, 485 (Tex. App.—San Antonio 1995, writ denied) (citing *El Paso Nat'l Bank v. Shriners Hosp. for Crippled Children*, 615 S.W.2d 184, 185 (Tex. 1981)) ("When there are no dispositive words that are capable of more than one meaning, a will is considered unambiguous for the purposes of will construction."); *Estate of Morgenroth*, 05-15-00777-CV, 2016 WL 4010053, at *3 (Tex. App.—Dallas July 25, 2016, no pet.) (explaining that ambiguity does not arise when parties disagree or "because of simply lack of clarity"). Considering the language of the will and the first codicil,

we conclude that Shepley sufficiently expressed his intent to grant the Brewers the right to purchase all or part of 191.48 acres.

Powell valued the total tract at $4,400,000. By requiring the Brewers to pay the full $4,433,000[9] when exercising their right of first refusal, the trial court effectively required the Brewers to buy *all* the land, despite the will and first codicil's unambiguous terms. *See generally Hicks v. Castille*, 313 S.W.3d 874, 883 (Tex. App.—Amarillo 2010, pet. denied) (holding that a property owner, who held a right of first refusal with respect to four acres abutting his property, has a right to sell a portion of his entire land because holding otherwise would "cause the right of first refusal to represent an unreasonable restraint on alienation by prohibiting [the property owner] from selling any portion of the tract less than [the entire land he owns]").

The trial court erred in requiring the Brewers to pay full value for the property when they opted to purchase a portion, negating their ability to buy *any* of it in accordance with the plain language of the will and the first codicil. *See, e.g.*, *In re Estate of Slaughter*, 305 S.W.3d at 812 (reversing the trial court's erroneous construction of a will and rendering the judgment the trial court should have rendered). We also note that the offset reimbursement provision in the trial court's order deviates from the unambiguous language of the will and the first codicil.

---

[9]     *See supra* note 5, at 4.

There is no mention of or reference to an offset reimbursement provision in the will or the first codicil, nor do either document allude to it indirectly. Courts must not redraft wills to vary or add provisions "under the guise of construction of the language of the will" to reach a presumed intent. *Stahl*, 610 S.W.2d at 151. The trial court therefore erred by adding an offset provision not originally contemplated by the will or first codicil as part of the court's ruling that the Brewers were required to pay the full value of the ranch to option to purchase any party of it.

## Conclusion

Having concluded that the Brewers may purchase any portion of the property and the value of their selected portion must be appraised as of Shepley's date of death without regard to any diminution in value to the remainder of the property, we reverse the judgment of the trial court and remand the case to the trial court for further proceedings consistent with this Opinion.

Sarah Beth Landau
Justice

Panel consists of Justices Lloyd, Landau, and Countiss.